[Civ. No. 6537. Third Dist.—April 9, 1941.]

JOSIE SMETHERHAM, Respondent, v. LAUNDRY WORK-
ERS' UNION, LOCAL NO. 75 et al., Appellants.

J. M. Inman and E. Richard Vaughn for Appellants.

Sumner Mering for Respondent.

THOMPSON, J.—This is an appeal from a judgment granting a writ of mandate directing the reinstatement of the petitioner to membership in a Laundry Workers' Union of Sacramento on the ground that she was illegally expelled and awarding damages against the union for loss of wages amounting to $1761.60.

The Laundry Workers' Union, Local No. 75, is an unincorporated association at Sacramento, auxiliary to the Laundry

Workers' International Union. The objects of the organization, expressed in the constitution of the International Union, are, among others, ''to cooperate in every movement which tends to benefit the organization, . . . to . . . perfect an impregnable labor organization; to improve the industry by increasing the efficiency of the service and creating a feeling of confidence and good will *between employer and employee.*'' For many years, the petitioner, Josie Smetherham, has been a member in good standing of the local laundry union. She was employed in a Sacramento laundry at wages averaging $23 per week. Mrs. Dorothy Burrus was a member of the same local union and she was also employed in the laundry where the petitioner worked. A quarrel arose between the petitioner and Mrs. Burrus over personal affairs. It culminated in a physical conflict between them at the laundry during working hours. Blows were exchanged. The glasses of Mrs. Burrus were knocked off and broken, but no personal injury resulted to either party. A charge of battery was filed against the petitioner, but it was subsequently dismissed. Thereafter, Mrs. Burrus filed written charges with the executive board of the local union in the following language:

''I, Dorothy Burrus, herewith prefer charges of assault and battery against Josie Smetherham, with deliberate intent to injure me and for mental abuse, caused by same Josie Smetherham through falsehoods told me after the assault.''

Josie Smetherham was not furnished a copy of the charges as required by Article VII, Section 2, of the By-laws, but she attended the hearing before the board and participated in the proceeding, thereby waiving her objection to a lack of notice. On August 13, 1939, the executive board, sitting in a *quasi*-judicial capacity, heard the charges, and recommended that:

''Josie Smetherham be expelled from Local Union No. 75 for assaulting and abusing one of our fellow members, namely Dorothy Burrus.''

Subsequently the recommendation of the local union was approved and adopted by a divided vote of the members of the organization. On August 20, 1939, the petitioner was notified by the union that she ''had been expelled from Local No. 75, . . . for conduct unbecoming a member of our organization, the charges having been assault and battery''.

The petitioner was further informed that no member of the local union would thereafter be permitted to work with her during the time she was in bad standing.

An appeal to the Laundry Workers' International Union, which was not determined for a year or more, resulted in affirmance by that organization. This petition for a writ of *mandamus* was then filed in the Superior Court of Sacramento County. The cause was heard upon the testimony which was adduced at the hearing before the executive board of the local union. That evidence is presented to this court in a settled bill of exceptions. The court adopted findings in accordance with the facts which we have previously recited, and determined that the petitioner had been illegally expelled from the union, for the reason that she was tried by the executive board, found guilty and expelled from membership for a personal offense of which the board had no jurisdiction under the by-laws or constitution of the organization. It was further found that the petitioner was damaged on account of said illegal action of the board, in the loss of wages during the time she was unable to secure other employment, in the aggregate sum of $1761.60. A writ of *mandamus* was thereupon issued, directing the Laundry Workers' Union, Local No. 75, and its officers, to promptly reinstate the petitioner to membership in that organization, in full standing. The petitioner was also awarded judgment for damages against the Local Union No. 75, only, for the sum of $1761.60. From that judgment this appeal was perfected.

 *Mandamus* is a proper proceeding by means of which to compel the reinstatement to membership of one who has been illegally expelled from a duly organized association. (63 C. J. 691, sec. 59; 4 Am. Jur. 474, sec. 29; 31 Am. Jur. 865, sec. 69.) Damages may also be awarded to one who has been illegally expelled from such an organization for wages lost on account of having been deprived of the opportunity to work or to obtain employment. (*Greenwood* v. *Building Trades Council of Sacramento*, 71 Cal. App. 159, 171 [233 Pac. 823]; 63 C. J. 691, sec. 60.) In hearing and determining charges against a member of the organization, the executive board acts in a *quasi*-judicial capacity in administering the disciplinary laws and rules of the association. (*McConville* v. *Milk Wagon Drivers' Union*, 106 Cal. App. 696 [289 Pac. 852].) It is true that courts will not

interfere with the disciplining or expelling of members of such associations where the action is taken in good faith and in accordance with its adopted laws and rules. But if the decision of the tribunal is contrary to its laws or rules, or it is not authorized by the by-laws of the association, a court may review the ruling of the board and direct the reinstatement of the member. (*Sweetman* v. *Barrows*, 263 Mass. 349 [161 N. E. 272, 62 A. L. R. 311]; *Most Worshipful United Grand Lodge, etc.*, v. *Lee*, 128 Md. 42 [96 Atl. 872, Ann. Cas. 1918E, 1174]; 25 R. C. L. 57, sec. 14.)

In the present proceeding, the petitioner may not complain of a failure on the part of the executive board to serve her with a copy of the charges as required by the by-laws, for the reason that she attended the proceedings before the board and participated therein and thereby waived that right. (*63 C. J. 687, sec. 56.*)

The by-law upon which the organization relies to support its action in excluding the petitioner from membership is found in section 2 of article VI of the regularly adopted by-laws of Laundry Workers' Union, Local No. 75. It reads:

"No member shall injure the interests of another member by undermining him or her in wages, or in any other willful manner, by which the interests of the other may be placed in jeopardy. Any member found guilty of such conduct shall be subject to fine, suspension, or expulsion as the Union may direct."

We are satisfied the petitioner was wrongfully expelled as a member of the organization for the reason that she engaged in a personal conflict with another member of the association. Her conduct did not tend to undermine or injure the interests or standing of Mrs. Burrus in the laundry union or with her employer. It is apparent the foregoing by-law does not purport to regulate the personal conduct of members of the union in any manner which does not affect their interests with relation to the organization or their employment. The conflict which is involved in this proceeding did not affect Mrs. Burrus' employment in the laundry nor did it impair her standing in the organization. It had nothing to do with her business relations. The constitution and by-laws of a voluntary association are the measure of the authority conferred upon the organization to discipline, suspend or expel its members. The provisions of the constitution and by-laws

become the contract between the organization and its members, limiting the power to regulate the conduct of its members. (*Lawson* v. *Hewell,* 118 Cal. 613 [50 Pac. 763, 49 L. R. A. 400].)

In determining that the petitioner was wrongfully expelled as a member of the organization, that she is entitled to be reinstated and that she is entitled to recover judgment for the amount of wages which she lost on that account, Honorable Dal M. Lemmon, the learned judge of the trial court, rendered a well-considered opinion which we adopt in part as the decision of this court, as follows:

"No member can be expelled and thus deprived of his interest in the property of the association, except for violation of some provision of the law of the association creating the offense charged and prescribing expulsion as a penalty, or, in the absence of such provision, for offenses of an infamous character indictable at common law, or for offenses against the member's duty to the organization. (4 Am. Jur. 469.) The offense here was not of the infamous character indictable at common law, named in the rule. Nor can it be maintained that it was against the member's duty to the organization. The most that can be said is that the offense was against an individual member rather than against the association.

"If the expulsion is to be sustained it must therefore find basis in the laws of the association. A member may be expelled for violation of a law of the association which provides for expulsion. (7 C. J. S. 60.)

"Defendants argue that the charge against the plaintiff comes within the inhibitions of the following provisions of the Union's constitution and by-laws: ' . . . [Section 2 of Article VI, *supra*]' The question depends upon what is meant by the word 'interests' of a member. Any uncertainty which exists must be considered in the light of the intention of the parties and that intention must be determined from a consideration of the language employed and the subject-matter of the by-laws. Obviously the words relate to employment and working conditions. The objectionable conduct to come within this provision must be directed to the injury of the member *as an employee.* Any physical or mental injury which is not intended or calculated to harm a member in his employment cannot be considered a violation

of this section. To hold otherwise one must read into the contract something beyond the reasonable and proper construction thereof. Where one construction would make the contract unusual or extraordinary, courts are to disregard such construction if .the contract may reasonably be subject to a construction which is fair and just. Indeed, it must be presumed that the parties intended the contract to be reasonably construed. (*Hettinger* v. *Thiele*, 15 Cal. App. 1 [113 Pac. 121].)

 "Upon the defendant's motion the court reopened this case after submission and permitted defendants to present certain testimony which had been given before the Executive Committee. This additional testimony was to the effect that plaintiff had stated after the difficulty between her and Mrs. Burrus that the latter was mentally unbalanced and that her husband had endeavored to have her confined in an asylum. What has been stated herein with reference to the physical injuries applies to this further testimony. In the absence of some showing that the conduct has a reasonable tendency to substantially injure a fellow member's employment, the court must conclude that this section has no bearing.

 "It is not necessary to consider closely whether circumstances have been shown which amount to laches on the part of the plaintiff. The change in the conditions and relative positions of the parties upon which defendants rely relate to the damages which plaintiff claims to have sustained. Had she brought her action promptly after her cause of action accrued, it is claimed that the damages assessable against defendants in case plaintiff prevailed would have been minimized. Assuming, but not deciding, that this is sufficient factual basis for invoking the doctrine, this defense must fall because it would be inequitable under the facts disclosed.

. . . . . . . . . . . .
"Laches is founded principally upon the equitable maxims 'He who seeks equity must do equity', 'He who comes into equity must come with clean hands', and 'The law serves the vigilant, and not those who sleep upon their rights'. The propriety of the application of the rules depends upon the conduct and situations of all of the affected parties, not solely upon one. It may be equitable to apply it against one who denies a liability as well as against one who seeks to enforce a right. The rule is developed that lapse of time brought about by the conduct of an adverse party cannot avail him.

(10 R. C. L. 404; 19 Am. Jur. 348.) A delay is excusable where it was caused or contributed to by the conduct of the party who claims laches (21 C. J. 243). Or as is said in 10 Cal. Jur., page 535, under such a situation a defendant is estopped to urge the defense.

"As to the matter of damages, the only pertinent evidence is found in the plaintiff's own testimony. She testified that her earnings in the laundry averaged $23.00 per week and that since her discharge she has worked one day as a floor lady, three months conducting a restaurant, and a week in a North Sacramento laundry. It is clear that she lost her employment at the Palace Laundry as a direct and proximate result of her expulsion from the union. It is a general rule that it is the duty of an employee who has been wrongfully discharged before his term of service has expired, to seek other employment, and thus diminish the damages sustained by him. (8 Cal. Jur. 787.) Apparently this rule applies where the employee sues a third party for wrongfully bringing about his discharge. (*Adams* v. *Cameron*, 27 Cal. App. 625 [150 Pac. 1005, 151 Pac. 286].) It is also a general rule that an employee who is wrongfully discharged is not obliged to seek or to accept other employment of a different or inferior kind, in order to mitigate damages. (Note to 28 A. L. R. 737; *Elbert* v. *Los Angeles Gas Co.*, 97 Cal. 244 [32 Pac. 9].) And the contract price is the correct measure of damages if there is no claim made that the employee could have obtained other employment.

. . . . . . . . . . . .

"Plaintiff's employment at the North Sacramento laundry was early in January, 1939. It may be inferred that she might have continued with that employment had she been so inclined. She left that position because she considered the wages too low. Her wages there were at the rate of $.37 per hour for a five-hour day. Had she worked at that laundry for the period between December, 1938, and June, 1939, she would have earned approximately $377.40. Her wages at the Palace Laundry for the period between August, 1937, and June, 1939, would approximate $2,139.00. The difference, or $1,761.60, is the measure of damages."

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.