[L. A. No. 17336. In Bank. Jan. 12, 1942.]

JOE SMITH, M.D., Appellant, v. KERN COUNTY MEDI-
CAL ASSOCIATION (an Unincorporated Association)
et al., Respondents.

Borton, Petrini, Conron & Borton for Appellant.

Alfred Siemon, Bennett Siemon, Hartley F. Peart and Howard Hassard for Respondents.

SHENK, J.—The petitioner, a physician, sought the writ of mandate for the purpose of obtaining his reinstatement to membership in the Kern County Medical Society, an unincorporated association, from which, on November 15, 1935, his expulsion was ordered by the society. The petition for the writ was denied by the superior court and the petitioner has appealed from the judgment dismissing the proceeding.

In any proper case involving the expulsion of a member from a voluntary unincorporated association, the only function which the courts may perform is to determine whether the association has acted within its powers in good faith, in accordance with its laws and the law of the land. (*Levy* v. *Magnolia Lodge, I. O. O. F.*, 110 Cal. 297 [42 Pac. 887]; *Smetherham* v. *Laundry Workers' Union*, 44 Cal. App. (2d) 131 [111 Pac. (2d) 948]; 7 C. J., pp. 64, 68.)

The undisputed facts are as follows:

The Kern County Medical Society is an unincorporated association of physicians and surgeons formed to develop the science of medicine, promote the betterment of the medical profession, and preserve and protect the public health. Membership is confined to physicians and surgeons holding a degree and duly licensed to practice in the state and in the county of Kern. The association is governed by a constitution and by-laws, and membership of qualified applicants is acquired by signing the constitution and by-laws of the society. The society federates with the medical associations of other counties in the state to form the California Medical Association, which in turn is a member of the American Medical Association. Membership in the county organization entitles the member to the privileges of access to the medical data, information and literature of the respective federations. Members do not acquire any severable property interest, nor do any beneficial rights accrue except as stated.

The petitioner had been a member of the respondent society for a period of seventeen years prior to his expulsion. At the time of and prior to his expulsion he had been serving as a physician superintendent on the staff of the Kern General Hospital operated by the county of Kern through its board of supervisors.

About April, 1933, certain physicians, members of the Kern County Medical Society, as taxpayers of Kern County, instituted an action in the superior court in that county seek-

ing to enjoin the county supervisors from accepting at the county hospital patients who could afford to pay in whole or in part for care and medical service. It is admitted that it had been the practice and policy of the board of supervisors in the conduct of the hospital to treat such patients at the expense of the county. It appears to be conceded that there were and are sufficient private hospitals in Kern County to care for all patients requiring hospital treatment who could afford to pay therefor. The decree of the court granting injunctive relief in that action, entered on December 3, 1933, was modified on appeal so that with certain exceptions indigent persons only could be admitted to the county hospital for treatment. (*Goodall* v. *Brite,* 11 Cal. App. (2d) 540 [54 Pac. (2d) 510].)

Commencing in the year 1931 and each year to and including the year 1938, the Kern County Medical Society adopted a resolution providing that failure on the part of any member to resign from the staff of the Kern General Hospital "within a reasonable time, while present unsatisfactory conditions exist in said hospital shall be construed as violation of ethics, and shall make such member" liable to disciplinary action in accordance with the constitution and by-laws.

A new constitution and set of by-laws were adopted by the society in 1934 and were signed by the petitioner and the other members of the society. It was therein provided, among other things, that a member who violated any provision of the constitution or by-laws, or the principles of professional conduct, was liable to censure, suspension or expulsion. Charges against a member were required to be in writing and signed, and a copy furnished to the accused. Opportunity was provided for the accuser and accused to be heard before the committee on grievances, which was required to submit its written report and recommendation to the board of directors. A hearing before the board was provided for and if the board duly voted for expulsion the matter was to be referred to the membership in meeting, where a two-thirds vote was necessary to sustain the board's action. Notice of the decision was required to be given to the accused and the action of the board was agreed to be final, subject only to appeal to the council of the California Medical Association, and then to the American Medical Association. Reapplication for membership in the society could be made after the expiration of one year, to be considered in the same manner as a new application.

On September 18, 1935, charges were brought against the petitioner, signed by Dr. N. N. Brown. The accusation charged the petitioner with violation of the principles of ethics adopted by the society, and specifically section 2, article VI, chapter III, which read: "It is unprofessional for a physician to dispose of his services under conditions that make it impossible to render adequate service to his patient or which interfere with reasonable competition among the physicians of the community. To do this is detrimental to the public and to the individual physician, and lowers the dignity of the profession." The accusation also charged that the petitioner had for several years participated in a political policy to monopolize the care, treatment and hospitalization of the sick by the county of Kern at public expense by the unlawful use of the county hospital irrespective of the lawful right of patients to be treated at public expense, with the object and purpose of interfering with reasonable competition among physicians in the community; that as a result of such political policy and practice the county hospital became overcrowded and understaffed so that it became impossible to render adequate service. It was also charged that the petitioner lent his cooperative endeavors in such a way as to create a political issue in the campaign interests of the members of the board of supervisors and contrary to the dignity and honor of the medical profession.

The petitioner filed a denial of the charges. Hearings were had before the committee on grievances and the board of directors, of which the petitioner had due notice, but which he voluntarily did not attend. The action of expulsion by the board was referred to a vote of the members at a meeting held November 15, 1935. The finding of the court was that the expulsion was sustained by a two-thirds vote of the members in attendance, and that all of the proceedings were in strict conformity with the rules of the society.

The petitioner appealed to the California Medical Association and to the American Medical Association, each of which in turn declared the expulsion regular, in accordance with the by-laws, and affirmed the order of expulsion.

In his complaint in the mandamus proceeding the petitioner alleged that the new constitution and by-laws were adopted irregularly and as part of a scheme and plan to control the operation and management of the Kern County Hospital and to prepare a foundation for the expulsion of the

petitioner; that the charges against the petitioner were part of said scheme or conspiracy, and did not constitute violations of the principles of ethics or by-laws of the society; that the hearings were had without the taking of any evidence sustaining the charges; that the petitioner was not presented with a written copy of the charges, and that he did not have a fair opportunity to defend himself because of such alleged conspiracy; that the proceedings were contrary to the constitution and by-laws of the society; that the expulsion order if sustained would injure the petitioner in his property rights and in the practice of his profession. The petitioner sets forth the same contentions on the present appeal from the judgment denying him any relief.

The findings of the trial court and the evidence in support thereof are a complete answer to the petitioner's contentions. The court found that the amendments to the constitution and by-laws reducing the vote of the members at a meeting thereof from a three-fourths to a two-thirds majority on questions of expulsion were regularly and duly adopted and that the petitioner expressed his approval of such amendments and consented to be governed thereby by his signature duly and regularly endorsed thereon; and that he agreed to be bound by the principles of ethics adopted by the society. The court also found that the charges against him constituted a violation of the principles of medical ethics and of the laws of the society; that the proceedings against the petitioner were all duly and regularly taken; that neither the resolution adopted by the society nor the expulsion proceedings were part of any unlawful plan or scheme and that the board and the membership acted in good faith; that the petitioner would not be deprived of any property rights; that the only right to which he was entitled as a member of the society was access to reports and medical data which were reserved to the membership as a whole; that the petitioner had exhausted all of his remedies within the medical associations, and that application for reinstatement would be futile.

There is sufficient evidence in the record to support the findings of the trial court. ■ The procedure provided by the rules of the society was followed and the petitioner was accorded every opportunity to defend himself. He may not be allowed to complain that hearings, of which he had due notice and opportunity to attend, were conducted in his ab-

sence. The requirements of the law are fulfilled when the accused is afforded notice and an opportunity to be heard. (*Levy* v. *Magnolia Lodge, I. O. O. F., supra.*) If the society did not receive evidence from the accused himself, it was not a failure of the law or the rules adopted by the society, but a failure on the part of the accused when he voluntarily absented himself from hearings of which he had due notice.

■ There is no merit in the contention that the required two-thirds majority of the membership did not vote for expulsion. The record shows that 22 members so voted and the minutes of the society declared that the members voting for expulsion constituted a two-thirds majority of those in attendance. The petitioner has not shown that a quorum was not present, nor that the qualified members voting for expulsion did not constitute a two-thirds majority. The minutes comprise sufficient proof of regularity in the absence of any contrary showing by the petitioner.

■ Prior to the action of the board above noted, and in 1932 and 1933, written charges were filed against the petitioner for his failure to resign from the Kern County Hospital staff. No disciplinary action was taken at that time. The petitioner contends that the termination of those proceedings without disciplinary action amounted to an acquittal of the charges and precluded the society from again accusing the petitioner in 1935. There is also no merit in this contention. The practices which formed the basis of the charge were continuing, and the accusation was filed upon the failure of the petitioner to resign after the adoption of the 1935 resolution. No question may here be entertained of the propriety of the adoption of the Code of Ethics, the violation of which has been charged. It was not the service on the hospital staff alone which the society ruled to be a breach of ethics, but such violation was expressly deemed to be service on the staff while the conditions persisted which were contrary to the rules of ethical practice formulated by the associations. The petitioner was given an opportunity to seek to correct the objectionable conditions or to separate himself from the hospital staff without losing his membership in the society. ■ The courts may not properly here declare that such an association may not expel a member who persists in practices which by the rules of the society and the written agreement of the member himself, are unethical. The showing before the trial court was sufficient to

support the finding that the charge was one which constituted a violation of such rules. What was condemned was the indulgence in practices declared by the society and agreed by the petitioner to be unethical. █ The fact that a remedy may exist by contempt proceedings for violations of the injunctive order in the case of *Goodall* v. *Brite, supra,* would not deprive the respondents of their right to expel the petitioner if such right existed. █ The case of *Otto* v. *Journeymen Tailors' Protective & Benevolent Union of S. F.,* 75 Cal. 308, 314 [17 Pac. 217, 7 Am. St. Rep. 156], involving an unincorporated association, states the applicable rule as follows: "The right of expulsion from associations of this character may be based and upheld upon two grounds: 1. A violation of such of the established rules of the association as have been subscribed or assented to by the members, and as provide expulsion for such violation; 2. For such conduct as clearly violates the fundamental objects of the association, and if persisted in and allowed would thwart those objects or bring the association into disrepute." In that case it was concluded that the trial court properly found that the ground for expulsion was not well taken and affirmed the judgment decreeing the plaintiff entitled to the writ of mandamus to effect reinstatement. In the present case the petitioner has not shown that the ground of expulsion was not well taken. He attempts to do so by the argument that the provisions of which violation was charged were part of other provisions relating to contract practice and that inasmuch as he was not engaged in contract practice as such, he should not be expelled for taking an active part in creating the same conditions condemned in relation to contract practice. The applicable provision quoted hereinabove from section 2, article VI, chapter III, of the principles of ethics adopted by the society, appeared as the first paragraph of the section under the caption "Contract Practice." A definition of the term "contract practice" followed. An express provision was also included that contract practice *per se* was not unethical. Obviously it was not necessarily the practice by name which was disapproved by the membership, but certain express conditions thereby created. The record discloses and the society found that the petitioner had continued an activity which created such conditions. █ Any matter of policy involved in the adoption of the by-laws, the code of ethics, and the resolution in conformity therewith, is a question for the membership itself and is not debatable

here so long as it is not shown that such policy is in violation of law. Here such violation is not shown. The petitioner, having agreed to be bound by the laws adopted by the membership, is therefore precluded from any relief in this proceeding. (*Levy* v. *Magnolia Lodge, I. O. O. F., supra*; *Lawson* v. *Hewell*, 118 Cal. 613 [50 Pac. 763, 49 L. R. A. 400].) As stated in the last cited case, the contractual relation between the association and one of its members is that which exists by virtue of the rules of the association, and so long as the association acts toward him in accordance with those rules there is no violation of the contract. (See also *Smetherham* v. *Laundry Workers' Union, supra*.)

The judgment is affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Houser, J., Carter, J., and Traynor, J., concurred.