[S. F. No. 17559. In Bank. Sept. 30, 1949.]

LESLIE DOTSON et al., Plaintiffs and Appellants, v.
 INTERNATIONAL ALLIANCE OF THEATRICAL
 STAGE EMPLOYES AND MOVING PICTURE MA-
 CHINE OPERATORS OF THE UNITED STATES
 AND CANADA, LOCAL 162 et al., Defendants and
 Appellants.

364

Gladstein, Andersen, Resner & Sawyer and Herbert Resner for Plaintiffs and Appellants.

Bodkin, Breslin & Luddy, Peter E. Giannini and Michael G. Luddy for Defendants and Appellants.

GIBSON, C. J.—Plaintiffs, Leslie Dotson and Walter J. Murrah, sought a writ of mandate compelling defendant Local 162, a labor organization, and certain of its officers to admit plaintiffs to membership as moving picture projectionists. They also asked an injunction to restrain defendants from preventing their employment in the area under the local's jurisdiction, general damages for alleged loss of wages, exemplary damages, and restitution of claimed overcharges in dues. Defendants have appealed from portions of a judgment which

granted a writ of mandate directing defendants to admit plaintiffs to full journeyman membership and an injunction restraining defendants from interfering with plaintiffs' employment or refusing to dispatch them to employment with seniority and other rights equal to those of journeyman members. Plaintiffs have appealed from portions of the judgment which denied them general and exemplary damages. The judgment also allowed plaintiffs certain sums as overcharges in dues, but these sums have been paid and are not included in the present appeals.

Local 162 is affiliated with the International Alliance of Theatrical Stage Employes and Moving Picture Operators of the United States and Canada, hereinafter called the International, which is chartered by the American Federation of Labor. The local has jurisdiction over projectionists employed in San Francisco and Marin Counties, and it has either written or oral contracts with at least 75 of the approximately 80 motion picture theaters in the area that they will employ only members of the local or persons dispatched by it as projectionists.

Members of the locals are also members of the International, and, under its constitution, they may secure work in areas beyond the jurisdiction of their home locals by applying to the local situated where employment is desired, but they may remain members of their home locals instead of joining the local which dispatches them to work. Workers having this status were referred to at the trial as "outside members" or "visiting members" of Local 162. Outside members have no right to vote or otherwise participate in the local's affairs, and they have limited rights to work. All positions within the jurisdiction of a local must be filled by its own members, but if the local membership is unable to care for all vacancies, preference must be given to members of affiliated sister locals, and persons not members of the International may not be given employment until all members of resident and out-of-town locals have been employed.

Under the International's constitution each member must obtain from his home local a "working card," which appears to be in the nature of a membership card, and before accepting a position in the jurisdiction of another local he must deposit his working card with the secretary of the sister local who holds this card until the member leaves the jurisdiction. (Const. of Internat., art. 21, §§ 7, 8.) An outside member who

wishes to join the local which dispatches him to work, instead of remaining in the status of an outside or visiting member, may proceed by either of two distinct methods authorized by the International constitution, (1) by "application for membership . . . upon the official printed form of this Alliance, to be supplied to the applicant by the local union to which he seeks admission" (Const. of Internat., art. 21, § 2), or (2) by obtaining a "transfer card"* from his home local and presenting this card to the local with which he desires to become affiliated. (Const. of Internat., art. 19, § 18.) Under either of these methods the applicant must obtain the approval of the local to which he applies.

For many years plaintiffs have been members of locals situated in other states, Dotson being a member of an Arkansas local and Murrah of one in Oklahoma, and they remained members in good standing of their home locals at all times involved herein. Murrah came to San Francisco in November, 1938, and Dotson arrived in February, 1939. They did not apply for membership or present transfer cards to Local 162 but, rather, deposited their working cards with the local, and they were assigned to work as outside members. They continued to pay dues to their respective home locals, remaining members thereof, and they were dispatched to work because as members of their home locals they were also members of the International.

Plaintiffs and other outside men consulted a law firm, which, on March 7, 1945, wrote a letter to the president of the International stating that certain visiting members of Local 162, whose names were not disclosed, desired to become members of Local 162 but that the local refused to admit them. The letter further stated that the local engaged in other assertedly improper and discriminatory practices, that the outside members were considering the possibility of litigation, and that they wished the International's president to investigate the matter.

Copies of this letter and of a second similar one from the law firm were sent by the International to Local 162. Much resentment developed in the local, because its officers felt that the letters to the International should not have been

---

*This transfer card relates only to the transfer of membership from one local to another and it is not to be confused with the working card which is in the nature of a membership card issued by the home local and is necessary to secure work either within or without the jurisdiction of the home local. (Const. of Internat., art. XXI, § 7.)

sent without revealing the names of the complainants, that the charges should first have been presented to the local, and that the outside members should not have hired attorneys who, it was claimed, represented C. I. O. unions and Communists. There is testimony, though denied, that at a union meeting Billingsley, the local's business agent, stated that the men responsible for the letters had "consulted a phony 'Commy' lawyer" and that "as soon as they were sure who the men were that they would be on their way out of town."

Plaintiffs were accused of having caused the letters to be sent to the International, but they denied the fact. Murrah subsequently told Billingsley that he did not desire to remain at work while the question of who sent the letters was being investigated. After giving the required two weeks' notice for leaving work, he quit on July 13, 1945, and on July 15, he requested return of his working card or membership card, which was mailed to him the next day and was never redeposited with the local. Dotson last worked in San Francisco as an out-of-town member on July 24, 1945. The working card which he had deposited with Local 162 expired on August 1, 1945, and when he received a new working card from his home local he kept it and did not deposit it with Local 162 but obtained work elsewhere. On at least two occasions in August and October, 1945, plaintiffs asked Billingsley if there was any work for them, and Billingsley replied that there was none.

At trial plaintiffs based their claims with respect to membership in Local 162 upon two somewhat inconsistent theories, first, that the local had actually accepted them as members by permitting them to work under its jurisdiction for a number of years but nevertheless wrongfully deprived them of the privileges and indicia of full membership, and second, that the local maintained closed shop contracts with employers and at the same time arbitrarily refused to admit plaintiffs to membership or dispatch them to work. It was also asserted that defendants, actuated by malice, conspired to deprive plaintiffs of their employment as projectionists, entitling them to both general and exemplary damages.

The trial court found that plaintiffs had not become members of or transferred to Local 162 but had paid dues to and remained members of their out-of-state locals, and the evidence is ample to support this finding. The court found and concluded, however, that the local had closed shop contracts

with practically all of the theaters in the area and that it had maintained an arbitrarily closed union from 1919 until the time of trial, and the local was ordered to admit plaintiffs to full journeyman membership and was enjoined from interfering with their employment as projectionists. It was further found that there was no conspiracy, fraud, malice, intimidation, or coercion on the part of defendants to deprive plaintiffs of their livelihood or to deny them admission into the local and that plaintiffs, in July, 1945, had picked up the membership cards which they had deposited with Local 162 and therefore were not available for work within the jurisdiction. Apparently upon the basis of these findings the court denied plaintiffs' claim for general and exemplary damages.

## DEFENDANTS' APPEAL

The principal question presented by defendants' appeal is whether plaintiffs have established a right to relief under the recent decisions of this court that a labor organization may not properly maintain both a closed shop and an arbitrarily closed or partially closed union. (*James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]; *Williams* v. *International etc. of Boilermakers*, 27 Cal.2d 586 [165 P.2d 903]; *Thompson* v. *Moore Drydock Co.*, 27 Cal.2d 595 [165 P.2d 901].) These decisions also hold that an employee who has been injured by a union's conduct in violation of this principle may obtain an injunction ordering the union, in the alternative, either to admit him to full membership upon reasonable terms and conditions applicable to all persons or to refrain from preventing his employment upon the ground that he does not belong to the union.

In the present case plaintiffs have established that Local 162 maintains closed shop agreements with practically all of the theaters within its jurisdiction and that it is impossible for moving picture machine operators to obtain work unless they are dispatched by the local. Further, it is clear that defendants cannot satisfy their duties under the Marinship case by offering to resume dispatching plaintiffs to work as outside men, because the record shows that giving plaintiffs work in this manner would not be equivalent to granting them full membership in Local 162. As visiting members, plaintiffs would have few of the privileges accorded to regular members, for instance they would not be allowed to vote for officers or upon matters of union policy, and their seniority rights, if existing at all, would not be equal to those of mem-

bers. Although they would be under the control of the local and would be required to pay the same percentage of their wages as is paid by regular members of the local, they would be kept in an inferior status analogous to that of the auxiliary membership considered in *James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900], and the junior membership condemned in *Cameron* v. *International Alliance, Etc.*, 118 N.J.Eq. 11 [176 A. 692]. The basic question, therefore, insofar as defendants' appeal is concerned, is whether plaintiffs have been arbitrarily excluded from *full journeyman membership* in Local 162.

 Whether or not a labor organization is arbitrarily closed to a particular worker depends, of course, upon the facts of each case, and it is plaintiffs' burden to prove that they are entitled to membership, that membership is closed to them, and that it is arbitrarily closed, since these matters are essential parts of their cause of action under the Marinship case. Defendants contend that plaintiffs have not met this burden and that the trial court erred in granting the requested relief because plaintiffs have not shown either that they are able and willing to comply with the requirements and regulations of the union or that the requirements are unreasonable. As recognized in the Marinship case, a union is not compelled to admit all persons as a condition to maintaining closed shop agreements, and it has the "right . . . to reject or expel persons who refuse to abide by any reasonable regulation or lawful policy adopted by the union." (*James* v. *Marinship Corp.*, 25 Cal.2d 721, 736 [155 P.2d 329, 160 A.L.R. 900].) For example, the court there in effect upheld the right of the union to impose initiation fees and dues. It has also been held that an assessment of union members for the purpose of opposing a proposed amendment to the state Constitution is reasonable and that a member's refusal to pay the assessment can properly result in suspension of his membership and consequently, by virtue of collective bargaining contracts, loss of his right to perform radio services or produce radio programs. (*De Mille* v. *American Fed. of Radio Artists*, 31 Cal.2d 139 [187 P.2d 769, 175 A.L.R. 382].) Clearly a union cannot be said to have acted arbitrarily in withholding membership from an applicant who does not meet all reasonable requirements or qualifications prescribed by the union as conditions of membership.

Here it appears that the constitution of the International authorizes only two methods by which a person may become

a member of an affiliated local, that is, by "application for membership . . . upon the official printed form of this Alliance" or by obtaining a "transfer card" from the local of which he is a member and presenting this card to the local which he desires to join. The application blank provided for in the by-laws of the International contains a statement that the applicant authorizes the local to which he applies to be his exclusive agency for collective bargaining and that he agrees to abide by the rules of the local and the International. The form also requires certain information, including a list of theaters, laboratories, and studios where the applicant has worked, apparently to assist an investigation and appraisal of his qualifications, and the making of an application obviously constitutes a part of the union's regular procedure in processing new members. Murrah, however, testified that he had not presented an application for membership or a transfer card to Local 162, and there is no evidence that Dotson ever applied for membership by either method. To the contrary, plaintiffs admit in their briefs that they did not apply.

Further, the constitution of the International prescribes certain other qualifications, such as that the applicant must be a citizen of the United States or Canada, that he must not be a member of "any organization having for its aim or purpose the overthrow, by force, of the Constitution and Government of the United States or the Government of the Dominion of Canada," and that he must be of good moral character and reputation (Const. of Internat., art. 1, § 3, art. 21, § 1). A member found to lack any of the qualifications is subject to expulsion. (Const. of Internat., art. 1, § 3.) The constitution of Local 162 provides certain other prerequisites for membership, among which are payment of $250 initiation fee (Const. of Local 162, art. 2, § 4) and presentation of a physician's certificate that the applicant is free of tuberculosis and is physically able to perform the duties required of him (Const. of Local 162, art. 2, § 2).

Plaintiffs do not claim that any of the foregoing qualifications or requirements for membership is unreasonable or beyond the scope of legitimate activity of a labor union, and this question is not before us.

The trial court did not make findings as to plaintiffs' qualifications for membership except that they were competent and qualified moving picture machine operators and projectionists, and no attempt was made by plaintiffs

to prove compliance or ability to comply with all the terms and conditions prescribed by the constitutions, nor did they offer to comply. Further, it is admitted that plaintiffs did not apply for membership, and they state that at trial they relied on the belief that an application was not necessary in order to bring them within the rule of *James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]. This position is, of course, without merit, since the Marinship case expressly recognized the right of a union to impose reasonable requirements as conditions of obtaining membership. (25 Cal. 2d 721, 736.)

Plaintiffs also say that they did not apply for membership because it would have been an idle act, and, although not expressly argued, they apparently rely upon this theory as an excuse for failure to meet other requirements of the union. In support of their contention they point to evidence which they assert establishes that any application would have been arbitrarily rejected. The record shows that from 1924 to July, 1945, no outside men had been admitted to membership, although five were admitted in August, 1945, before the complaint was filed herein, and six were admitted after the complaint was filed but before trial. There is also evidence of statements and conduct by the local's officers from which plaintiffs could reasonably have believed that no outside man would be admitted without the personal approval of Billingsley, the local's business agent, and that Billingsley would not approve plaintiffs as members because they were suspected of having instigated the writing of the letters to the president of the International containing the charges made against Local 162.

The evidence, although conflicting and not entirely satisfactory, is sufficient, when considered as a whole, to show that defendants in effect told plaintiffs that they could not become members of Local 162 and that it would be useless and an idle act for them to apply. The trial court made no specific finding upon this issue, but it did conclude that Local 162 had maintained an arbitrarily closed union from 1919 until the time of trial, and this may be sufficient to permit implication of a finding that it would have been useless for plaintiffs to apply. The question need not be determined here, however, because on the record before us an express finding to this effect would not, without more, be sufficient to entitle plaintiffs to a judgment for the reason that they did not attempt at the trial to prove compliance with the

terms and conditions prescribed by the union, nor did they offer to comply.

Even if we assume that it would have been an idle act for plaintiffs to apply for membership and to make an offer to comply with other requirements of the union *prior to commencement of the action,* it was nevertheless incumbent upon them *at trial* to establish compliance or offer to comply with all reasonable terms and conditions prescribed by the union. In the absence of such a showing or offer, they were not entitled to compel specific performance of the duty imposed on the union by the doctrine of the Marinship case to admit them to membership or to refrain from interfering with their right to work. Obviously, proof that it would have been an idle act for plaintiffs to make an application would not establish that they are qualified as members or that they are able and willing to meet the requirements for membership. Since a union is not required to accept as members persons who do not meet reasonable conditions imposed by it, the court could not properly grant the relief requested unless plaintiffs were able and willing to comply with all reasonable regulations. .

The matter clearly is not one of mere formality because if courts were to order admission of persons into a union without requiring compliance with reasonable conditions it would in effect give such persons rights and privileges beyond those extended to regular members and might lead to disruption of the union. (See *James* v. *Marinship Corp.*, 25 Cal.2d 721, 736 [155 P.2d 329, 160 A.L.R. 900].) Closely analogous is a problem arising under the law of contracts, where it is the settled rule that although an unqualified repudiation by the promisor may excuse tender or performance of conditions precedent in advance of suit, it does not excuse a party, when seeking specific performance, from pleading and proving at trial that he is ready, able, and willing to perform the contractual conditions. (See *Buckmaster* v. *Bertram,* 186 Cal. 673, 678 [200 P. 610] ; *Ray Thomas, Inc.* v. *Cowan,* 99 Cal.App. 140, 146 [277 P. 1086] ; *Cockrill* v. *Boas,* 213 Cal. 490, 492 [2 P.2d 774] ; 4 Pomeroy, Equity Jurisprudence [5th ed., 1941] 1051; 49 Am.Jur. 184.)

It follows that proof that plaintiffs' applications would have been arbitrarily rejected would not relieve them of the necessity of showing at the trial that the union's conditions for membership were unreasonable and contrary to public policy or that plaintiffs had complied with the requirements

or at least had made an offer to do so, coupled with proof of ability.

Plaintiffs, however, assert that under the constitution of the International they have an absolute right to be admitted as transfer members and that Local 162 has refused to accept any outside men by this method, and they have requested this court to receive additional evidence for the purpose of showing that the local has ignored the transfer card provision of the International's constitution. There is no merit in this position. While the constitution of the International compels a local to issue transfer cards to its members, the constitution does not compel a local to accept members by the transfer method. Instead it recognizes the right of the local to which the card is presented to reject the applicant, and there is nothing therein which forbids the practice adopted by Local 162 of requiring outside men to meet some or all of the qualifications required of new members.

This, of course, does not mean that there is any right to reject outside men arbitrarily, since under the Marinship doctrine, as we have seen, a union must either accept all applicants for membership upon compliance with reasonable terms and conditions or refrain from interfering with their right to work. However, it does not appear that there is anything improper or contrary to public policy in the requirement of Local 162 that outside men file an application and submit to a reexamination of their qualifications as a condition for membership. The mere fact that an outside man may have originally complied with the requirements of the International at the time he joined his home local does not mean that he still meets those qualifications, nor does it in any way indicate that he can and does meet other reasonable conditions imposed by Local 162. In the absence of a showing that the constitution of the International precludes Local 162 from requiring an application from outside members and from imposing other requirements as conditions for membership or that such requirements are unreasonable, plaintiffs have not shown that they are entitled to the requested relief.

There is nothing in the additional evidence offered on appeal which tends to prove that plaintiffs have complied with the local's requirements for membership or that those requirements are unreasonable. Plaintiffs merely offered to prove that, after the decision by the District Court of Appeal, Murrah and a third person presented transfer cards to Local

162 but were notified that their cards had been rejected without prejudice to their right to become members by the application method. This evidence, if true, would not justify or require affirmance of the judgment. Plaintiffs, therefore, are not entitled to its admission on appeal, and the request is denied. The offer of defendants to present rebuttal evidence is also denied.

The judgment must be reversed for the reasons above stated, and it is unnecessary to discuss defendants' further ground for reversal that plaintiffs failed to exhaust their remedies, within the machinery provided by the union, by appealing to the president of the International or to the general executive board or the convention of the International.

## PLAINTIFFS' APPEAL

Plaintiffs claim that the court erred in denying them both general and exemplary damages, and they rely in part upon their testimony that they were forced to leave their work and in part upon the finding of the trial court that since July, 1945, defendants have not made work available to them and have not dispatched them to employment.

■ The refusal to allow damages may not be successfully attacked upon the theory that plaintiffs were forced to leave their work, because the evidence is clearly sufficient to support the specific finding of the trial court that "it is not true that a conspiracy existed or that fraud, malice, intimidation or coercion was practiced by or on the part of defendants . . . to deprive plaintiffs of their livelihood as motion picture operators or of their membership in the International union, or to deny them admission into Local 162." ■ Nor can the court's refusal to grant damages be attacked on the ground that plaintiffs were not dispatched to work as outside members, since the constitution of the International provides that outside men must keep their working cards on deposit with the local, and plaintiffs admit that they had picked up their working cards.

■ The provision requiring deposit of working cards, however, applies only to outside men, not to regular members. If plaintiffs were qualified for full membership in Local 162 but defendants nevertheless arbitrarily denied them admission and at the same time refused to permit them to work without belonging to the local, plaintiffs would be entitled to recover damages for wrongful interference with their right to work. (See *James* v. *Marinship Corp.*, 25 Cal.2d 721, 728-729 [155 P.2d 329, 160 A.L.R. 900] ; Rest., Torts, §§ 766, 810;

31 Am.Jur. 844 et seq.; 30 Am.Jur. 64; *cf., Brotherhood of Locomotive Firemen* v. *Tunstall,* 163 F.2d 289, 293; *Smetherham* v. *Laundry Workers' Union,* 44 Cal.App.2d 131, 135 [111 P.2d 948].) ▮▮ The trial court's findings show that plaintiffs' earnings were greatly reduced after they stopped working in the jurisdiction of Local 162. No findings were made, however, relating to plaintiffs' right to damages on the theory that the reduction in their earnings was caused by a wrongful interference with their right to work, and the denial of damages, at least in the absence of findings upon the matter, is inconsistent with the court's conclusion that plaintiffs were entitled to the status of full membership and should have been given that status retroactive to June 29, 1945.

Inasmuch as the portions of the judgment pertaining to plaintiffs' rights to full membership must be reversed, and since the right to damages depends, at least in part, upon the outcome of the membership issue, the entire matter should be remanded to the trial court so that all of the problems may be considered together.

All portions of the judgment appealed from are reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.