[L. A. No. 21143. In Bank. May 11, 1951.]

ALFRED B. CASON, Respondent, v. THE GLASS BOTTLE BLOWERS ASSOCIATION etc., et al. (an Unincorporated Association), Appellants.

V. P. Lucas for Appellants.

J. Albert Woll, James A. Glenn, Herbert S. Thatcher and Charles P. Scully, Amici Curiae on behalf of Appellants.

George D. Higgins for Respondent.

GIBSON, C. J.—Defendants—a national labor union, an affiliated local, and certain union officials—appeal from a judgment which awarded plaintiff damages as against the national union and granted a peremptory writ of mandate directing plaintiff's reinstatement to membership.

Plaintiff was president of a local union composed of employees of the Maywood Glass Company. Prior to May 6, 1945, plaintiff and a committee gave notice to the company that the local had voted not to work on Sundays, and the plant was not in operation on Sunday, May 6th. The men reported for work on Monday, May 7th, but they did not work until the following day because they found that their machines had been made ready and glass had been placed therein by non-union workers. The company's general manager telegraphed the national union, complaining that plaintiff had refused to allow the local's upkeep men or operators to put the machines in order and had refused to permit the men to work on Sunday and Monday.

In voting not to work on Sundays, plaintiff and the local relied on a ruling made in 1944 by Maloney, the national pres-

ident, that under the contract between the employers and the national union it was "optional" with the locals whether the men would work on Sundays. So far as appears from the record, this construction of the contract remained in effect until May 11, 1945, at which time Maloney sent a telegram to the local union stating that the refusal to keep the plant in operation was a violation of the agreement with the employers and instructing the local to comply with the contract and keep the factory in operation seven days a week. The plant, however, was not in operation the next two Sundays, May 13th and 20th, and on the latter date Maloney sent plaintiff the following telegram: "I am informed by our national representatives that regardless of instructions contained in my telegram of May eleven the plant of the Maywood Glass Company is not in operation today Sunday stop I am holding you as president of Local one ninety responsible for this condition of affairs and by the authority vested in me as president do hereby suspend you from membership in our union the Glass Bottle Blowers Association of the United States and Canada."

Four days later on May 24th Maloney sent plaintiff a second telegram reading: "My recent telegram suspending you from membership in our organization was primarily because you refused as president of Local 190 to permit our upkeep men to come in the factory on Sunday May 6 for the purpose of placing machines in condition to work the following Monday; a violation of section one of our wage contract. Second, because the Maywood Glass Company opened their machines with foremen you stopped the plant for twenty-four hours by not allowing the operators to work in violation of section thirteen of our wage contract."

As a result of his suspension, plaintiff was discharged by his employer. Prior to commencement of the present suit, plaintiff brought an action against the national union, its president, and a local representative to enjoin them from enforcing the suspension order and to compel them to reinstate him to membership, and also to recover damages for loss of wages. The trial court in that case found that the suspension was wrongful and awarded plaintiff damages for loss of wages from the date of suspension to December 17, 1945, the date of trial, but denied an injunction on the ground that it was improper for the court to order immediate restoration and thereby interfere with the procedure prescribed by the union for review of the disciplinary order. No appeal was taken, and the judgment became final.

During the pendency of the action above referred to, the president's order of suspension was approved by the executive board of the national union on March 2, 1946, and plaintiff then appealed to the national convention. In August, 1946, the matter was referred to the grievance committee of the convention, and plaintiff presented evidence and argued his case before it, but he was not allowed to confront or cross-examine his accusers or to rebut the evidence against him. The committee ruled against plaintiff, and its report was adopted and approved by the convention.

Thereafter, on December 17, 1947, plaintiff commenced the present action. The trial court found that he had been denied a fair hearing, and its judgment awarded him damages as against the union and granted a writ of mandate directing his reinstatement.

It is clear that mandate is available in this state against an unincorporated association. (*Von Arx* v. *San Francisco G. Verein*, 113 Cal. 377 [45 P. 685]; *Otto* v. *Journeyman Tailors' etc. Union*, 75 Cal. 308 [17 P. 217, 7 Am.St.Rep. 156]; *Smetherham* v. *Laundry Workers' Union*, 44 Cal.App.2d 131 [111 P.2d 948]; see, also, *Dotson* v. *International Alliance etc. Employes*, 34 Cal.2d 362 [210 P.2d 5]; *Elevator Operators etc. Union* v. *Newman*, 30 Cal.2d 799 [186 P.2d 1]; *Smith* v. *Kern County Medical Assn.*, 19 Cal.2d 263 [120 P.2d 874]; *Levy* v. *Magnolia Lodge No. 29, I.O.O.F.*, 110 Cal. 297 [42 P. 887]; *Dingwall* v. *Amalgamated Assn. of Street Ry. Emp.*, 4 Cal.App. 565 [88 P. 597].)

The trial court did not err in refusing to quash service of summons or to dismiss the writ proceedings as to the local union and three individual defendants. The motions were not made until the close of the trial, and it is obvious that defendants' general appearance was a waiver of service of summons and of any defects therein. (Code Civ. Proc. §§ 406, 416; *Harrington* v. *Superior Court*, 194 Cal. 185 [228 P. 15].) Moreover, the motion to dismiss the proceedings was based on the ground that the alternative writ was defective as to damages, and the defendants who made the motion could not have been injured because no damages were awarded against them.

The principal contentions made by defendants are as follows: (1) that the prior judgment is res judicata and bars any relief to plaintiff herein; (2) that the present action is barred by the statute of limitations; (3) that plaintiff received a fair hearing and was accorded every privilege to

which he was entitled under the constitution and by-laws of the national union; and (4) that certain damages were improperly allowed.

The prior judgment held that plaintiff's suspension by the national president without notice and a hearing was wrongful and that plaintiff was entitled to damages resulting therefrom. The court, however, denied an injunction on the ground that reinstatement would constitute an interference with the functions of the union in considering plaintiff's case. The correctness of this judgment is not before us, no appeal having been taken therefrom, but we must determine its scope.

■ The judgment is clearly res judicata insofar as it held that plaintiff's original suspension by the national president was wrongful and that he was entitled to damages resulting therefrom. ■ It is not res judicata, however, as to any matters which the court expressly refused to determine and which it directed should be litigated in another forum or in another action. (*Stark* v. *Coker,* 20 Cal.2d 839, 843 [129 P.2d 390]; *Watson* v. *Poore,* 18 Cal.2d 302, 309 [115 P.2d 478]; Rest., Judgments, § 67.) As we have seen, the trial court there found that a further hearing properly lay within the union and that it was not warranted in interfering with those proceedings, and it concluded that an injunction or immediate restoration to membership was not necessary at that time to the granting of adequate relief. It is apparent, therefore, that the court left open and refused to determine the question of plaintiff's right to ultimate reinstatement and that it contemplated that plaintiff would have a cause of action for damages or injunction in case of any wrongful denial of reinstatement. In view of the fact that the correctness of the prior judgment is not before us, we need not determine whether the trial court in that action was justified in limiting the issues to the propriety of the original suspension by the national president, and we likewise need not determine whether a union may properly provide for suspension of a member without a hearing, for a reasonable time, pending determination of the charges against him. ■ As noted above, however, it is clear that the prior judgment in effect determined that a wrongful refusal by the union to reinstate plaintiff would constitute a new and independent wrong giving rise to a new cause of action. Accordingly, the rule that a party cannot split his cause of action and obtain piecemeal recovery is inapplicable.

Defendants contend that the action is barred by section 340 of the Code of Civil Procedure, which provides a one-year period for tort actions for injury to a person by the wrongful act of another, or, in any event, by section 339 of that Code, which provides a two-year period for actions on contracts not in writing.

Plaintiff's second amended complaint alleged that the suspension was wholly illegal and void as held in the prior action, that he had exhausted his remedies within the union, and that he had been denied reinstatement without being afforded a fair hearing or trial before the national convention. He prayed for a writ of mandate directing his reinstatement in the union and for damages. The trial court in effect found that the original action of the president was merely a suspension, and that the subsequent refusal to grant reinstatement. constituted an expulsion. If wrongful, the denial of reinstatement gave rise to a new cause of action.

■ The record shows that there was a closed shop contract between the national union and plaintiff's employer, and plaintiff was entitled to sue in tort if the union wrongfully expelled him and at the same time refused to let him work because he was not a union member. (See *James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900] ; *Dotson* v. *International Alliance, etc. Employees,* 34 Cal.2d 362 [210 P.2d 5].) ■ Plaintiff likewise had contract rights by reason of his membership in the union, and he was entitled to bring an action for breach of that contract if he was wrongfully expelled. (*Lawson* v. *Hewell,* 118 Cal. 613, 618-619, 621 [50 P. 763, 49 L.R.A. 400] ; see *De Mille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139, 146, 153-154 [187 P.2d 769, 175 A.L.R. 382] ; Chaffee, *The Internal Affairs of Associations not for Profit,* 43 Harv.L.Rev. 993, 1001, 1007.) ■ Thus the trial court correctly determined that the action partook of the nature of both tort and contract. ■ The final decision of the union, denying reinstatement, occurred when the national convention approved the grievance committee's report on August 5, 1946, and the complaint was filed on December 17, 1947, which was more than one year but less than two years thereafter. It follows, therefore, that plaintiff's action is not barred insofar as it is based on contract because it was brought within the two-year period prescribed by section 339.

The trial court found that plaintiff had been denied the right to know the charges against him, to confront his

accusers, to cross-examine them and to refute their evidence, and it concluded that he had been wrongfully expelled. Defendants contend that the findings are not supported by the evidence and that the record shows that plaintiff was accorded a fair trial by the union. We must first determine what kind of hearing the law requires and in what circumstances the court will intervene in these matters.

In cases of this type we must strive both to protect the rights of individual members and to avoid impairing the right of the union to govern itself. The courts will interfere with the decision of an association expelling one of its members if the rules of the association governing expulsion have not been observed or if the accused member has not been afforded those rudimentary rights which will give him a reasonable opportunity to defend against the charges made. (See *Otto* v. *Journeyman Tailors' etc. Union*, 75 Cal. 308, 314 [17 P. 217, 7 Am.St.Rep. 156] ; *Taboada* v. *Sociedad Espanola*, 191 Cal. 187, 192 [215 P. 673, 27 A.L.R. 1508] ; *McConville* v. *Milk W. D. Union*, 106 Cal.App. 696, 697-698 [289 P. 852] ; *Brick Layers etc. Union* v. *Bowen*, 183 N.Y.S. 855; Chaffee, *The Internal Affairs of Associations not for Profit*, 43 Harv. L.Rev. 993, 1014-1020.) It is a fundamental principle of justice that no man may be condemned or prejudiced in his rights without an opportunity to make his defense, and this principle is applicable not only to courts but also to labor unions and similar organizations. (*Taboada* v. *Sociedad Espanola*, 191 Cal. 187, 191 [215 P. 673, 27 A.L.R. 1508] ; *Ellis* v. *American Federation of Labor*, 48 Cal.App.2d 440, 443 [120 P.2d 79].) It is, of course, true that the refined and technical practices which have developed in the courts cannot be imposed upon the deliberations of working-men, and the form of procedure is ordinarily immaterial if the accused is accorded a fair trial. (See *McConville* v. *Milk W. D. Union*, 106 Cal.App. 696, 701 [289 P. 852] ; 30 Columb.L.Rev. 847, 852; 4 Am.Jur. 471-472; 7 C.J.S. 61.)

The union's procedure, however, must be such as will afford the accused member substantial justice, and the requirements of a fair trial will be imposed even though the rules of the union fail to provide therefor. (*Taboada* v. *Sociedad Espanola*, 191 Cal. 187, 192 [215 P. 673, 27 A.L.R. 1508] ; *Von Arx* v. *San Francisco G. Verein*, 113 Cal. 377, 379 [45 P. 685] ; *Ellis* v. *American Federation of Labor*, 48 Cal.App.2d 440, 443-444 [120 P.2d 79] ; See Dangel and Shriber, Labor

Unions [1941] 204-206; Martin, Law of Labor Unions [1910] 384-386.) ▉ The authorities recognize that such a trial includes the right to notice of the charges, to confront and cross-examine the accusers, and to examine and refute the evidence. (*Taboada* v. *Sociedad Espanola*, 191 Cal. 187, 191 [215 P. 673, 27 A.L.R. 1508]; *Ellis* v. *American Federation of Labor*, 48 Cal.App.2d 440, 443-444 [120 P.2d 79]; *Harmon* v. *Matthews*, 27 N.Y.S.2d 656, 659; *Brooks* v. *Engar*, 259 App.Div. 333 [19 N.Y.S.2d 114]; see *Bartone* v. *Di Pietro*, 18 N.Y.S.2d 178; Dangel and Shriber, Labor Unions [1941] 204-206; 44 Ill.L.Rev. 631, 661-663, 673; Witner, *Civil Liberties and the Trade Union*, 50 Yale L.J. 621, 632-633; 41 Mich. L.Rev. 99, 101; 27 A.L.R. 1512.)

▉ In the present case, the telegrams of May 20 and 24, 1945, were sufficiently explicit to inform plaintiff of the nature of the charges contained therein. No other notice of those charges was necessary since the rules of the union did not require any formal written accusation.

At the national convention, as provided in the union's constitution and in accordance with its rules and practices, the matter was referred to the grievance committee for hearing. The committee allowed plaintiff to appear and present evidence, but it did not permit him to hear the testimony of Minton, the new national president, who was the only witness against plaintiff. No record was kept of what Minton said, but there was testimony that he spoke for about 30 minutes and that he left papers and telegrams for consideration. The committee had also been given the national union's file of the case, but plaintiff was not informed of its contents or afforded an opportunity to examine it. After some deliberation the committee concluded that the national president acted within his authority in suspending plaintiff.

When the report of the grievance committee was presented to the convention, the chairman refused to admit plaintiff on the ground that the union's rules did not allow suspended members to appear before the convention. Other members, however, were permitted to speak in his behalf, and Minton argued in reply, asserting that plaintiff had been rightfully suspended. Thereafter the committee report was adopted and approved by the convention.

▉ The foregoing evidence is clearly sufficient to support the trial court's conclusion that plaintiff was denied a fair hearing before the grievance committee. Although he was allowed to appear and testify, he was not permitted to confront

Minton, to hear his evidence or to refute it. Also, plaintiff was not given any opportunity to examine the file of the national union, which was considered by the committee, and it does not appear that he knew what was in the file or that it had been presented to the committee. We cannot tell, of course, if additional charges were contained in President Minton's testimony before the grievance committee or in the file used by the committee, but this possibility is simply another aspect of plaintiff's claim that he was denied the right to hear the evidence presented against him. Under the circumstances, it is apparent that he did not receive a fair trial within the meaning of the cases discussed above.

It may be that the deficiencies in the proceedings before the grievance committee would have been cured if plaintiff had received a hearing in the convention itself, but he was not allowed to appear before that body. ■ We do not, however, wish to imply that the union's practice of denying suspended members the right to appear before the entire convention was unreasonable, since it would obviously be impracticable for that body to try charges against members. That function was properly assigned to the grievance committee, and a fair hearing by the committee would be sufficient to protect the rights of an accused member.

■ . Under certain circumstances, where the facts are not disputed, a labor union may discipline a member without affording him a trial. For example, in *De Mille* v. *American Fed. of Radio Artists*, 31 Cal.2d 139, 154-155 [187 P.2d 769, 175 A.L.R. 382], it was held that the enforcement of a by-law providing for automatic suspension of a member upon failure to pay an assessment did not contravene the requirements of due process. (See, also, *Brown* v. *Lehman*, 141 Pa.Super. 467 [15 A.2d 513, 516-517].) ■ The present case, however, does not fall within this rule, since plaintiff denied most, if not all, of the charges against him. He controverted the accusations made in the telegram of May 24, 1945, that he refused to permit the upkeep men to come into the factory on Sunday, May 6, and that he caused the shutdown which occurred when the company used foremen to prepare the machines. Further, he presented evidence tending to show that, prior to the telegram of May 11 directing the local union to keep the plant in operation on Sundays, the local had an optional right to refrain from working on Sundays. With respect to the charge in the telegram of May 20, plaintiff did not claim that he took

any affirmative steps toward keeping the plant in operation, but he did assert that he did not keep anyone from working at any time. In view of his denials it was clearly improper to refuse reinstatement without affording him a fair hearing. Moreover, the union rules did not provide for any fixed, automatic penalty for the offenses charged here, and plaintiff was entitled to a proper hearing so that he could present mitigating evidence and also refute or minimize any evidence against him which might indicate guilt of the charges or have a bearing on the punishment to be imposed.

Defendants complain that the trial court erroneously admitted hearsay testimony as to statements made by William Gable, an officer of the national union, who was originally made a party defendant but who died before trial. In view of our conclusion that plaintiff was not afforded a fair hearing, we need not determine whether this testimony was properly admitted under an exception to the hearsay rule since it does not appear that any prejudice resulted to defendants.

Plaintiff was awarded damages for loss of wages from August 5, 1946, when the convention refused to reinstate him, to March 21, 1949, the date of the judgment, and for prospective loss of wages for one year thereafter. Defendants contend that the recovery of damages in the prior action precludes an allowance in the present case, but, as we have seen, the prior judgment is not a bar to the enforcement of any rights arising from the union's wrongful refusal to reinstate him.

It is next asserted in effect that some of the findings regarding damages were based on the original suspension by the president rather than on the subsequent refusal to reinstate plaintiff, and defendants argue that the court was referring to the original suspension when it found that plaintiff's damages were caused by the wrongful "expulsion." There is no merit in this position. The findings make it clear that the trial court proceeded on the theory that plaintiff was not expelled until the union refused to reinstate him, which constituted a new and independent wrong, and that his damages were caused by this expulsion. The only other complaint with reference to damages is likewise without merit. It is stated, without citation of authority, that the judgment improperly provided that it should bear interest at seven per cent from the date of its entry because part of the allowance of damages was for future loss of wages. It is clear,

however, that the judgment for damages for breach of contract was a judgment for money which would normally carry interest at that rate from the date of its entry, and there was no error in incorporating an express provision to that effect. (See Const., art. XX, § 22 [second section]; Deering's Gen. Laws, 1944, Act 3757, § 1; *Walters* v. *Bank of America etc. Assn.,* 9 Cal.2d 46, 58 [69 P.2d 839]; *Mulligan* v. *Wilson,* 94 Cal.App.2d 286, 292 [210 P.2d 526]; *McNabb* v. *McNabb,* 47 Cal.App.2d 623, 627 [118 P.2d 869]; *City of Los Angeles* v. *Aitken,* 32 Cal.App.2d 524, 527 [90 P.2d 377].)

 The trial court properly refused to pass on the truth of the charges against plaintiff, but it nevertheless ordered issuance of a writ of mandate directing defendants to set aside the suspension and expulsion and to restore and reinstate plaintiff as a member of the union. This judgment is too broad since it appears that the imposition of such a penalty by the union after a fairly conducted hearing may be justified on the basis of the charges of insubordination. The matter should therefore be remanded to the union for further proceedings in accordance with the rules which we have discussed. (*Cf. English* v. *City of Long Beach,* 35 Cal.2d 155 [217 P.2d 22]; *Steen* v. *City of Los Angeles,* 31 Cal.2d 542 [190 P.2d 937]; *La Prade* v. *Department of Water & Power,* 27 Cal.2d 47 [162 P.2d 13].)

 The judgment is modified by striking therefrom all of that paragraph relating to the issuance of a writ of mandate which commences with the words: ''That the Clerk of this Court be and he is hereby directed,'' and closes with the words: ''and without any prejudice whatsoever,'' and by inserting in lieu thereof the following: ''That the Clerk of this Court is hereby directed to issue a peremptory writ of mandate commanding defendants to afford plaintiff a full and fair hearing or to reinstate him to membership in the Glass Bottle Blowers Association of the United States and Canada and in Local Union #190 thereof.'' As so modified, the judgment is affirmed. Each side is to bear its costs upon this appeal.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

The opinion was modified and appellants' petition for a rehearing was denied June 7, 1951.