[No. 25494. Department One. May 13, 1935.]

ALICE RAY, *Respondent*, v. BROTHERHOOD OF RAILROAD TRAINMEN, *Appellant*, A. F. WHITNEY *et al.*, *Defendants*.[1]

[1]Reported in 44 P. (2d) 787.

*Eggerman & Rosling* and *DeWitt Williams,* for appellant.

*G. D. Eveland* and *Clarence J. Coleman,* for respondent.

BEALS, J.—Frank F. and Alice Ray were for many years husband and wife. Mr. Ray was a railroad man, and a member of the Brotherhood of Railroad Trainmen. As a member of this organization, he received a beneficiary certificate, class C, dated May 1, 1913, providing for the payment of a certain sum to the beneficiary therein named upon the death of the member. The certificate was payable to the plaintiff, Alice Ray.

Mr. Ray died December 31, 1929, and the Brotherhood of Railroad Trainmen refused to pay to plaintiff the amount called for by the certificate. She thereupon brought suit upon the certificate against the Brotherhood, the local lodge to which Mr. Ray had belonged, and certain officers of the grand and local lodges. From a judgment in plaintiff's favor, the defendant Brotherhood of Railroad Trainmen has appealed.

The Brotherhood of Railroad Trainmen is a voluntary beneficial association, primarily functioning as a labor union, but incidentally issuing beneficiary certificates to its members, the expenses of the Brotherhood being met by assessments levied to raise such funds as may be necessary for the expenses of the lodge for relief work and for payment of death and disability claims. These assessments are levied per capita, regardless of age or physical condition. The application for a beneficiary's certificate, the medical examination pursuant thereto, the certificate itself when issued, together with the constitution, rules and regulations of the Brotherhood, constitute the contract with the certificate holder.

Under the constitution and general rules, no claim

based upon any certificate is payable unless the member to whom the certificate was issued was in good standing at the time of death or disability, and it was provided that the failure of any officer or member of a subordinate lodge to keep the certificate holder in good standing should not render the lodge liable nor be the basis for any modification of the rule.

. The records of the Brotherhood show that Frank F. Ray was expelled from membership therein September 21, 1924, the circumstances appearing from the evidence as follows: During the winter of 1924, pursuant to the order of the United States Railroad Labor Board, the trainmen in the employ of the Great Northern Railway took a vote to determine whether they desired the Brotherhood of Railroad Trainmen, which at that time had the contract with the Great Northern Railway, or the Switchmen's Union of North America, to represent the yardmen in dealing with the employer. In this connection, it has been noted that the following stipulation appears in the record:

"It is stipulated between the parties that an election was held between the parties pursuant to agreement between the Brotherhood and the Switchmen's Union of North America and the Great Northern that a plebescite of those engaged in yard service should be held to determine as to what organization should represent the yardmen in negotiations with the Great Northern Railway Company."

Mr. Ray voted on this question February 28, 1924, he being then a member in good standing of appellant Brotherhood. He voted in favor of the Switchmen's Union representing the yardmen, instead of continuing the Brotherhood, his own organization, as such representative, thereby aiding the Switchmen's Union in its effort to take from the Brotherhood the contract for representation of the yardmen, in so far as the Great Northern Railway was concerned, which contract the

Brotherhood had held for over ten years. It seems clear that the obtaining and holding of such contracts, or "working agreements," was one of the principal reasons for the formation of the Brotherhood and for its continuance as an active organization.

Based upon his vote in favor of the Switchmen's Union, Mr. Ray was charged with an offense against the Brotherhood by a formal complaint filed pursuant to §§ 144 to 147 of the general rules; the specific charge being violation of § 142 thereof, all of these sections having been in full force and effect during the year 1924. Section 142 sets forth ten specific offenses for which an offending member may be disciplined by the Brotherhood. The first offense is defined as follows:

"Any member of this lodge violating any of the duties of membership, or any of the principles of brotherhood, shall, upon conviction thereof, be reprimanded, suspended or expelled."

The charge against Mr. Ray was in writing, signed by the local chairman, and reads as follows:

"Seattle, Wash., April 14th, 1924.
"Officers and Members
"Cascade Lodge No. 645,
"Everett, Wash.
"Dear Sirs and Brothers:

"I hereby charge Brother F. F. Ray, a member of Lodge No. 645, with unbecoming conduct and violation of his obligation, in this:

"That he did, on February 28th, 1924, vote in favor of the Switchmen's Union of North America, instead of voting in favor of the Brotherhood of Railroad Trainmen in our efforts to defend ourselves against the Switchmen's Union of America, which organization was proceeding vigorously in an effort to take from us the contract for yardmen on the Great Northern Railway, which contract we have held for the past eleven years.

"A schedule, or working agreement, is one, and the principal, thing for which this Brotherhood was cre-

ated, and I charge Brother Ray with an effort to defeat the aims of this Brotherhood when he voted against us, as set out above.

"Yours fraternally,
"CHARLES E. BROWER,
"Local Chairman No. 645."

Mr. Ray was notified of the filing of the charge, and the trial was set for May 18th, the trial committee having been appointed. In acknowledging receipt of the notice, Mr. Ray indicated that his views on the matter had not changed. On the day appointed, the trial committee met, and Mr. Ray, being present, maintained his former position. The minutes of appellant Brotherhood disclose the following as the result of the trial:

"Minutes of last regular meeting were read and on motion of Bros. Carroll and Shreve were accepted as read. Verdict of jurors Van Winkle, McElroy, Gondie, Carroll and Bagby in case of Bros. Groff, Smith and Ray, tried at our last regular meeting, was: 'That jury could not agree.' Moved and seconded Hector and Deahn that verdict be accepted, jury discharged. Carried. Jury excused by President from voting."

The matter was then referred to the president of the grand lodge, who instructed the local lodge that they should either appoint a new trial committee or that the lodge should hear the charges as a committee of the whole. A new trial committee was appointed, of which action Mr. Ray was advised, whereupon he requested the president to appoint someone to represent him at the hearing. The committee found Mr. Ray guilty as charged, whereupon the lodge voted that he be expelled. Although the constitution and general rules provided for an appeal from an order of expulsion, Mr. Ray did not avail himself of this right and was dropped from the rolls of the lodge and from the register of membership maintained in the grand lodge.

After Mr. Ray's death, respondent, his widow, made claim against the lodge, based upon his certificate, which claim was rejected; whereupon this action was instituted, more than three years after Mr. Ray's death and ten years after his expulsion.

Appellant contends that the trial court erred in awarding respondent judgment upon her husband's certificate, arguing that, upon the record as made, her action should have been dismissed. Appellant also contends that the trial court erred in rejecting evidence offered on its behalf, which it contends was competent and should have been admitted.

It seems that the law is correctly stated in 19 R. C. L. 1253, as follows:

"The expulsion or suspension of a member by a mutual benefit society, though carrying with it the forfeiture of insurance rights, if for a cause within the jurisdiction of the tribunal of the association by which it was pronounced, and after notice and opportunity to be heard, and the result of a trial fairly conducted in accordance with the laws of the association, is conclusive upon the merits and binding upon the civil courts, whether the action or proceeding in the civil court is for the restoration to membership or damages for expulsion, or an action for benefits claimed to have accrued subsequently to the expulsion or suspension. Where, however, property rights are involved the civil courts will make such investigation as may be necessary to determine that the trial and conviction of the aggrieved member was not a travesty upon justice, and did not lack in the essential elements of fairness, good faith, and candor which should characterize the action of men in passing upon the rights of their fellow men, and if a member has been wrongfully expelled and his contractual or property rights are thereby impaired, he is entitled to be reinstated by the courts."

Appellant earnestly contends Mr. Ray's trial was within the jurisdiction of the Brotherhood; that the

trial was held after notice to him, and that he was accorded full opportunity to be heard; and that the trial was fairly conducted in accordance with the constitution, rules and regulations of the Brotherhood.

It is clear that the holding of the contract to represent its members in dealing with the railroad was a very important matter to appellant Brotherhood. Appellant argues that the very life of the organization necessarily depends upon the continued maintenance of this right of representation. The certificate issued to Mr. Ray bound him to comply with the constitution and general rules and regulations of the Brotherhood as the same were then in force or might thereafter be adopted, and the Brotherhood naturally had the usual authority to discipline any member who might violate any duty resting upon him as such.

Appellant takes the position that, conceding that Mr. Ray, in voting upon the proposition which was submitted to the trainmen, had the right to vote as he pleased, nevertheless, as his opinion upon the matter was inconsistent with the declared desire of the Brotherhood, the latter was justified in trying Mr. Ray for an offense against its rules and regulations and in expelling him; it clearly appearing that he had voted in favor of the Switchmen's Union as the representative of the workmen concerned. It is argued that Mr. Ray directly participated in an attempt to destroy the Brotherhood and impair its usefulness, as well as the value of the certificate which is the basis of this action and other similar certificates.

The trial court found that Mr. Ray was a member of appellant Brotherhood, and regularly received his beneficiary certificate, naming respondent as beneficiary thereunder; that Mr. Ray fully complied with the constitution, rules and regulations of the Brotherhood, but that this appellant illegally and wrongfully expelled

Mr. Ray, and that the proceedings leading up to the order of expulsion were void,

"First, in that no valid charge was preferred against said Frank F. Ray; second, in that Frank F... Ray was once acquitted of the charge by the lodge; third, that there was no valid trial and expulsion had in accordance with the rules and regulations of the order. And that thereafter said Frank F. Ray tendered the dues required by said defendant, but that the same was refused and the defendant notified said deceased, Frank F. Ray, that all his rights in and to his membership in said defendant organization and under said Beneficiary Certificate Class 'C' had been terminated and canceled."

Appellant calls attention to the fact that its constitution contains the following paragraph:

"A member of the Brotherhood joining or becoming a member of the Switchmen's Union of North America or any labor organization presuming or contending to represent men in yard service shall be expelled,"

and argues that as, if appellant should lose the right to represent the yardmen in dealing with the employer, appellant's membership would decrease, and its ability to protect its members by beneficiary certificates similar to that here sued upon and in other ways would be much lessened, if not destroyed, it follows that, by voting for the Switchmen's Union as the representative of the yardmen, Mr. Ray was attempting to destroy the very life of appellant, and because of his vote alone was subject to discipline and expulsion. It does not seem to be contended that Mr. Ray had participated in any active campaign in favor of the Switchmen's Union, or that he had sought to influence any of his fellow-members in casting their votes for the representative desired. In this connection, it must be remembered that, as appellant states in its brief, the election was held pursuant to an order of the United States

Railroad Labor Board, and that, consequently, an agency of the United States government was directly concerned in the matter, and, indeed, had initiated the plebiscite.

It is, of course, conceded that appellant is a voluntary association, and that the reciprocal powers and obligations between it and its members arise out of contract. Such associations as appellant are recognized by the law, which will enforce for or against them certain contractual obligations, provided they do not offend against recognized public policies and are otherwise enforceable under the general law of contracts. Courts will always protect the rights of members of such associations when asserted in connection with things of pecuniary value, such as rights under the beneficiary certificate issued to Mr. Ray, against apparent unlawful or capricious action on the part of the association issuing the same. *Dubcich v. Grand Lodge A. O. U. W.*, 33 Wash. 651, 74 Pac. 832; *Kelly v. Grand Circle W. of W.*, 40 Wash. 691, 82 Pac. 1007; *State ex rel. Cicoria v. Corgiat*, 50 Wash. 95, 96 Pac. 689; *Local Lodge No. 104 v. International Brotherhood*, 158 Wash. 480, 291 Pac. 328.

Appellant advances the proposition that the power to determine what acts constitute an offense against the Brotherhood rests with that organization itself, and that the courts will not review the proceedings of a mutual benevolent association, unless a clear case of injustice is shown. We cannot assent to the first proposition. True, courts are loath to interfere with such associations as appellant in matters concerning their internal discipline; but where pecuniary rights are involved, orders of an association affecting such rights are subject to judicial review. With the second proposition, we are, generally speaking, in accord, but we think that the case at bar falls within the exception.

Conceding, as was held in the case of *Smith v. Grand International Brotherhood of Locomotive Engineers*, 83 W. Va. 355, 98 S. E. 580, that it is essential to the welfare of such an organization as appellant that it may discipline its members, nevertheless, in maintaining a proper discipline, valuable rights which have accrued to the members cannot unlawfully be infringed.

The basic principle here involved is: Can a voluntary association expel a member for exercising his judgment in casting his vote upon a proposition which the association itself, at the instance of an agency of the Federal government, requested him to vote upon? It must be remembered that it nowhere appears that Mr. Ray endeavored to stir up dissension among appellant's membership, or even that, before voting upon the question upon which he was called upon to express his opinion, he sought to make converts to his views. Mr. Ray was charged with "unbecoming conduct and violations of his obligations," the specification of the charge reading:

"That he did, on February 28th, 1924, vote in favor of the Switchmen's Union of North America, instead of voting in favor of the Brotherhood of Railroad Trainmen,"

the specification concluding:

" . . . and I charge Brother Ray with an effort to defeat the aims of this Brotherhood when he voted against us, as set out above."

It is clear, therefore, that the mere act of voting as he did was the alleged offense for which Mr. Ray was expelled, as the result of which respondent contends there were lost valuable rights based upon his certificate of membership. It is conceded that Mr. Ray, after his expulsion, tendered his dues, and that the

money was returned to him by the treasurer of the lodge, with the information that he had been expelled.

Appellant contends that, because Mr. Ray did not pursue further certain rights of appeal provided for by the by-laws of the Brotherhood, respondent is now precluded from maintaining this action, and in support of this proposition cites many authorities. It is true that, in many cases, the courts will not assume jurisdiction over disputes between members of an association, on the one hand, and the association itself, on the other, unless the member has exhausted his remedies within the order. This rule, however, does not apply in all cases, and the case at bar falls within one of the recognized exceptions.

There was not, of course, available to respondent any remedy within the order. She was not a member thereof, and could do no more than demand blanks upon which to furnish proof of death, which forms she demanded after the decease of her husband. *Dubcich v. Grand Lodge A. O. U. W., supra.*

As to appellant's contention that this action is barred because Mr. Ray did not seek to protect his rights by appealing within the order from the judgment of expulsion, we hold that the order of expulsion entered after certain proceedings had by the local lodge was absolutely void as based upon a purported charge which, considered both by itself and in the light of the evidence in the case, stated no offense whatsoever against the Brotherhood, and which, considered in the light of a charge that Mr. Ray was subject to discipline by the lodge, amounted to no more than a meaningless form of words which conferred upon the Brotherhood no jurisdiction whatsoever to attempt to subject him to any disciplinary measures.

The rights existing under Mr. Ray's certificate upon which respondent is now suing being valuable pecu-

niary rights, and the attempted expulsion of Mr. Ray being void as based on no offense whatsoever on his part, respondent was justified in seeking relief through the courts, based upon the refusal of appellant to recognize her right to recover under the certificate which appellant had issued to her deceased husband. The rule is well stated in the opinion in the case of *Rueb v. Rehder*, 24 N. Mex. 534, 174 Pac. 992, 1 A. L. R. 423, in which the supreme court of New Mexico used the following language:

"The question logically follows as to whether or not a member is required to appeal from a void order of expulsion before resorting to the courts for relief.

"While there is some conflict among the authorities upon this question, we believe that the weight of authority is to the effect that if the action of the lodge is without jurisdiction, or without notice or authority, it does not change the legal rights or status of any one; that the obligation to appeal within the order is not imposed when the judgment is void for want of jurisdiction. . . .

"The constitution and by-laws of such an association constitute the contract between the member and the association, and govern and limit the rights and liabilities of the member and the association. So long as such an association is acting under such rules and regulations, and in accordance therewith, the member must likewise act, as he is required to do, under such a contract or rules and regulations. When, however, the association departs from the letter and spirit of the contract, and does an act which it is not authorized to do under the contract, it would be without reason to say that the member was required to conform to the rules in order to secure relief from such unauthorized action. The contract, which is the constitution, rules and regulations, operates alike on both the association and the member. He agrees that it shall have the right, for certain infraction of its rules, to expel him from his membership, in a certain prescribed manner; that, if it votes to expel him in that manner, he will not resort to the courts for relief until after he has ex-

hausted his remedies in the order; that he will first appeal to the Grand Chief Engineer, and from his decision, if adverse, to the Grand International Division Convention. But he has not contracted that he will appeal from some decision rendered by the association, where he did not contract that it should have the power or authority to render such a decision.

"Under the by-laws in question in these cases, appellants contracted that they would abide by the rules and regulations; that for an alleged violation of the same they would submit to a trial by the local organization with which they were affiliated; that, if convicted thereof, they would appeal within the order to the designated tribunals. They did not agree that they should be subjected to a second trial for an alleged offense, where once tried and acquitted, nor that they could be expelled without evidence being produced in support of the charges, or an opportunity to introduce evidence to controvert charges that might be brought against them, and that, if they were tried in a manner not authorized by the rules and regulations, they would appeal to the tribunals within the order. . . .

"Appellees argue that appellant had no severable interest in the property belonging to the association, but we fail to see the application of this argument. Concededly, if the only interest affected by their expulsion was their joint ownership of the Bible and gavel, the courts would not interfere. But the property rights of appellants were affected by their expulsion. The insurance policies, which they had carried for years, were subject to cancellation, and would be cancelled, unless they were reinstated to membership. This property right justified the assumption of jurisdiction by the civil courts."

This doctrine is recognized in the case of *Webster v. Rankins*, 50 S. W. (2d) (Mo. App.) 746, and *Johnson v. International of United Brotherhood etc.*, 52 Nev. 400, 288 Pac. 170. In the case last cited, the supreme court of Nevada quoted with approval from Bacon, etc., as follows:

"It is said in Bacon, Benefit Societies (3d ed.), sec. 107, that: ' . . . It is, however, well settled that: "If the action of the lodge be a usurpation, or without notice or authority, it cannot affect the legal rights or change the legal status of any one. The obligation to appeal is not imposed when the judgment is void for want of jurisdiction. It may be likened to a judgment rendered by a court which has no jurisdiction of the subject-matter or of the person. No appeal or writ of error is necessary to get rid of such a judgment. It is void in all courts and places, and the duty of an expelled member to exhaust, by appeals or otherwise, all the remedies within the organization arises only where the association is acting strictly within the scope of its powers." '

"Such is the law as recognized by all authorities in England and by a great weight of authority in the United States. Sustaining the view stated, we mention some of the authorities. [Citing many cases, including *State ex rel. Cicoria v. Corgiat,* 50 Wash. 95, 96 Pac. 689.]"

The case of *Mulroy v. Supreme Lodge of Knights of Honor,* 28 Mo. App. 463, is in point, and supports our position. In the course of its opinion, the court said:

"It follows from these premises that the lodge to which James Mulroy belonged had no jurisdiction whatever to try or expel him upon the charge above named; that his expulsion was consequently null and void; that, being merely void, it was not incumbent upon him to take steps to have it reversed in a higher judicatory of the society; but that it left him clothed with the rights of membership, at least in respect of the mutual benefit fund of the society, to the same extent as though it had not taken place. Thereafter, if he paid no assessment, he was not notified to pay any; and consequently such non-payment cannot now be set up as a ground of forfeiture. In placing our decision upon the ground of want of jurisdiction over the subject-matter, we find it unnecessary to determine the question whether Mulroy received, prior to the second trial which resulted in his expulsion, the notice re-

quired by the rules of the order. It is immaterial to consider whether they gave him such notice, for they had no jurisdiction to try him at all upon the charge exhibited.''

Several other questions are discussed by appellant and urged as grounds for reversal of the judgment appealed from. As we hold that the entire proceeding instituted in the lodge for the purpose of invoking the disciplinary powers thereof against Mr. Ray was void, because it must be held as matter of law that no charge was ever stated against him which conferred upon appellant or any of its officers or subordinate lodges any authority to proceed against him as upon any lawful basis, it is not necessary to discuss the other grounds for reversal urged by appellant.

A man cannot be deprived of a right having a pecuniary value because he, as a member of such an organization as appellant, in participating in a plebiscite held within his organization at the behest of an agency of the Federal government, and in which it was his duty to express his preference in the manner provided by the election machinery, voted for one particular result rather than for another. It must be held that the vote was taken for the purpose of obtaining an honest expression of opinion on the part of those entitled to participate, and it is not contended that Mr. Ray violated any rule governing the voting.

A governmental agency desired this expression of opinion. If the members of the respective lodges participating in the plebiscite were required to register their preference under penalty of expulsion and the loss of valuable pecuniary rights should they vote otherwise than in one certain way, the entire proceeding would become farcical and worse than useless as a guide for any agency which might desire to consider the expression of opinion on the part of the voters, as

54

indicated by their ballots, in determining the action to be taken. Manifestly, ballots cast under threat of expulsion and the loss of a valued membership, together with property rights, would indicate little as to the real preferences of those who were supposed to express their sincere opinions for the benefit of an agency entitled to have a record thereof. That Mr. Ray could be "tried" and expelled for any such so-called infraction of the constitution and regulations governing appellant and its membership, finds no support in the law governing such a situation. It is contrary to every basic principle of the law of the land.

The judgment appealed from is affirmed.

MILLARD, C. J., MAIN, and TOLMAN, JJ., concur.

GERAGHTY, J. (dissenting)—I am unable to concur in the majority opinion. I think respondent's deceased husband, Frank Ray, was disloyal to the Brotherhood of which he was a member, and that his vote in support of the effort of the  Switchmen's Union to take from the Brotherhood the contract for representing the yardmen on the Great Northern Railway evidenced such a hostile attitude toward the Brotherhood that he was justifiably expelled from the order. He took no appeal from the action of the local lodge to the appellate tribunal of the Brotherhood and, for the five years intervening between his expulsion and his death, made no appeal to the civil courts for redress in respect to the financial loss, if any, sustained by the automatic cancellation of his benefit certificate.