[No. 35192.    Department One.    January 21, 1960.]

Thomas J. Poole, *Appellant*, v. The National Organization of Masters, Mates and Pilots of America *et al.,* *Respondents.*[1]

[1]Reported in 348 P. (2d) 986.

*MacDonald, Hoague & Bayless,* for appellant.

*Soriano & Soriano,* for respondents.

DONWORTH, J.—This appeal is from a judgment of dismissal entered after the trial court had sustained a demurrer to appellant's complaint in which he prayed for an order reinstating him as a member of respondent union and for damages resulting from its refusal to reinstate him.

The complaint contained two causes of action. In the first cause, appellant alleged in substance as follows:

That since 1942 he had held an unlimited master's license from the United States coast guard to captain vessels of any tonnage throughout the world; that the National Organization of Masters, Mates and Pilots, West Coast Local No. 90 (herein called respondent union) had been, and still was, a labor organization with its headquarters in San Francisco and a branch in Seattle; that employers in the commercial shipping industry on the Pacific coast required that all masters and other ship's officers be members of respondent union as a condition of their employment; that on and before June 4, 1947, appellant was a member in good standing of Local No. 90; that Art. IV, § 3(c) of the international organization, which was binding on respondent union, provided as follows:

"A member in arrears in dues and assessments or other indebtedness for six (6) months shall stand suspended until the indebtedness has been paid. He shall stand suspended and remain in default but *may* be reinstated upon payment of all accrued back dues and assessments or other indebtedness as levied by Locals or the International Organization plus two hundred ($200.00) dollars reinstatement fee." (Italics ours.)

That on or about June 4, 1947, appellant was charged by the Seattle branch of respondent union with violating its rules and regulations, and was wrongfully found guilty and fined $50; appellant refused to pay this fine and thereafter, up to the institution of this action, respondent union has refused to accept dues from him because his fine was not paid; that on or about November 15, 1948, appellant was suspended by respondent union for nonpayment of dues.

That on or about June 4, 1950, the membership of the Seattle branch adopted a resolution to the effect that appellant would never be allowed to be reinstated in Local No. 90 or any other local; this action was later confirmed by a vote at a regular membership meeting held at the San Francisco headquarters of respondent union.

That on or about November 22, 1957, appellant paid to Local No. 90 the sum of $1,445 (representing all unpaid dues, the $50 fine and $300 reinstatement fee) and requested reinstatement in respondent union. Because of the 1950 resolution, this money was returned to appellant and his application for reinstatement as a member was rejected.

The last paragraph of the first cause of action alleged that appellant has been deprived of employment in his profession and has been prevented from earning a livelihood as a master or ship's officer as the result of respondent union's wrongful refusal to reinstate him.

The second cause of action realleged the foregoing matters and set out certain items of damage, totaling $125,000, alleged to have been suffered by appellant by reason of the acts of respondent union.

Respondent union demurred to the complaint on all seven statutory grounds (RCW 4.32.050). The order sustaining the demurrer does not specify the ground or grounds on which the court sustained it.

Appellant's brief contains two assignments of error: (1) The sustaining of the demurrer, and (2) the dismissal of the action (after appellant refused to plead further).

Respondent union, in the conclusions in its brief, contends that the complaint is legally insufficient, as follows:

"2. The appellant has not alleged that he has complied

with all the requirements necessary for reinstatment in the association.

"3. The appellant has failed to allege that he has no adequate remedy at law.

"4. The action was barred by the appellant's failure to commence an action within six years from his suspension in 1948 and/or the alleged absolute repudiation and total breach of the contract in 1950.

"5. The action is barred by the appellant's unexcused and dilatory prosecution of the action."

We shall test the legal sufficiency of the complaint against respondent's contentions.

■ It is not necessary that appellant specifically allege that he has complied with all the requirements necessary for reinstatement. He has set forth the applicable provision in the union constitution relating to reinstatement, and has alleged that he tendered a sufficient sum of money with his request for reinstatement to membership and that respondent has *wrongfully* refused to reinstate him. These allegations are sufficient to state a cause of action for wrongful refusal of his reinstatement.

Respondent argues that appellant had no *right* to be reinstated because the word "may" in the second sentence of Art. IV, § 3 (c), *supra,* is permissive and leaves the question of reinstatement to the union's *discretion.*

■ In our opinion, Art. IV, § 3 (c), *supra,* does give the suspended member the absolute right of reinstatement upon his tendering the required amount of money to the union. The provision states that the member shall stand suspended *until the indebtedness has been paid.* The only reasonable inference from this is that, once the indebtedness has been paid, the member no longer stands suspended. The word "may," in its context here, grants the option of reinstatement to the suspended *member* and not to the *union.*

The situation here is similar to that presented in *Lowe v. Feldman,* 168 N. Y. S. (2d) 674, 11 Misc. (2d) 8 (1957) (unanimously affirmed by the New York supreme court, appellate division, in 174 N. Y. S. (2d) 949 (1958)). In that case, a union member sought a declaratory judgment as to

his rights under the following provision in the union constitution:

"Any member in good standing *may* make application and be eligible to receive benefits under the Pension Fund . . ."

It was there held that the word "may" meant the giving of permission to perform the act referred to and was exclusively for the benefit of the potential pensioners, so that the right to receive the pension was optional with the potential pensioner (union member) and not dependent upon the mood of the union officials.

Likewise, in the case at bar the word "may" in Art. IV, § 3 (c), *supra*, should be construed as granting to the suspended member a continuing option to pay the required indebtedness and thereby become reinstated or to continue in a suspended status.

We would be slow to hold otherwise, for to do so would in effect give respondent union the right to permanently bar a member from employment in a lawful vocation for a relatively minor infraction of the rules. The right to engage in a lawful vocation by which one may earn a livelihood is a property right, and ordinary disciplinary measures must not be of such a character as to deprive a member thereof. *Mahoney v. Sailors' Union*, 43 Wn. (2d) 874, 264 P. (2d) 1095 (1953). In the present case, the effect of the position taken by respondent union is to permanently deprive appellant of that right.

It is next contended that the complaint is legally insufficient because it fails to allege that appellant has no adequate remedy at law.

Paragraph III of appellant's first cause of action reads as follows:

"That at all times herein mentioned the employers on the Pacific Coast of masters and other officers in the commercial shipping industry have required as a condition of such employment membership in said labor organization, and that *without membership in Local 90 or the International, employment as a master or other officer was not available.*" (Italics ours.)

■ Thus, it is alleged that, unless appellant is reinstated in the union, he will be deprived of the right to earn a livelihood in his chosen profession. This court has recognized that such a right is specifically enforcible without regard to whether or not there is an adequate remedy at law. *Mahoney v. Sailors' Union, supra; Ray v. Brotherhood of Railroad Trainmen,* 182 Wash. 39, 44 P. (2d) 787 (1935).

It is agreed by both parties herein that appellant's rights, if any, arise by way of contract, since respondent union's constitution constitutes a contract between it and its members. Respondent union argues that this action is barred by appellant's failure to commence it within six years of his *suspension,* in 1948, and/or by the resolution of June, 1950 (to the effect that appellant would never be allowed reinstatement in the union).

■ Appellant's cause of action is not for wrongful *suspension,* but rather for wrongful *refusal to reinstate* him after he had complied with the contract provisions. Until such time as appellant requested reinstatement and tendered the requisite amount of back dues, fines, and the reinstatement fee, respondent union was under no obligation to reinstate him. The cause of action here arose in November, 1957, when appellant requested reinstatement and tendered the amount of money prescribed by the constitution and respondent union had refused to reinstate him. *Cason v. Glass Bottle Blowers Ass'n,* 37 Cal. (2d) 134, 231 P. (2d) 6, 21 A. L. R. (2d) 1387 (1951).

■ Perhaps a different question would be presented if the resolution of June, 1950 purportedly *expelled* appellant from the union pursuant to some applicable provision of the constitution. However, the complaint does not allege that respondent union purportedly so expelled him but simply alleges that the resolution of June, 1950 was to the effect that appellant would never be allowed reinstatement in the union. At best, this resolution, as alleged, would amount to no more than an anticipatory repudiation by respondent of its duty under the contract. *Leo v. Local Union No. 612,* 26 Wn. (2d) 498, 174 P. (2d) 523, 168 A. L. R. 1440

(1946). As such, appellant could elect to treat the resolution as a present breach and sue forthwith, or he could wait until he made a proper tender and demand before instigating an action. *McFerran v. Heroux,* 44 Wn. (2d) 631, 269 P. (2d) 815 (1954); 5 Williston on Contracts (Rev. ed.) 3752, § 1337. Here appellant elected to pursue the latter course, and, therefore, the statute of limitations did not commence to run until November 17, 1957. This suit was commenced in February, 1959.

It is finally contended that this action is barred because of laches on the part of appellant, or by estoppel.

As previously stated, the cause of action for which this suit was commenced did not arise until November 17, 1957, and the suit was commenced in February, 1959. There is no allegation in the complaint from which it could be inferred that respondent union in any way altered its position during this fifteen-month period. Assuming that the doctrine of laches could be invoked prior to the running of the statute of limitations, there is no factual basis for its application here. Clearly, appellant is not guilty of laches. Nor is there any such basis for respondent's claim that appellant was estopped to apply for reinstatement. On the contrary, the longer appellant delayed in applying for reinstatement, the more money respondent union would be entitled to receive from appellant as a condition to his exercise of that right.

In our opinion, respondent union has not shown any legal basis for the action of the trial court in sustaining the demurrer to the complaint, and, therefore, the judgment of dismissal is hereby reversed with directions to overrule the demurrer.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.