## McCUNE v. AMERICAN INSTITUTE OF REAL ESTATE APPRAISERS, et al.
### No. 67-1909.
Circuit Court, Dade County.

April 2, 1968.

E. F. P. Brigham of Brigham & Brigham and Darrey A. Davis of Scott, McCarthy, Steel, Hector & Davis, all of Miami, for the plaintiff.

G. David Parrish and Welsh & Cornell, all of Miami, for the defendants.

RALPH O. CULLEN, Circuit Judge.

*Opinion and judgment on the pleadings:* This cause came on for hearing, after due notice, upon the motion of the plaintiff, Marion C. McCune, for a declaratory judgment on the pleadings against the defendants, as constituting the professional ethics committee, South Florida Chapter No. 24, of the American Institute of Real Estate Appraisers, hereinafter respectively referred to as the chapter committee and the institute.

It is the plaintiff's contention that, in their disciplinary action against him, the defendants failed to follow the mandatory provisions of regulation no. 6 of the institute, and that, in the defendants' manner of proceeding against him, they were without jurisdiction and failed to accord him procedural due process of law.

The defendants claim that their disciplinary action against the plaintiff cannot be reached by the court, because the plaintiff has no property right in being a member of the institute (referred to as M.A.I.), and that he must first exhaust his internal remedies within the institute.

There is no dispute of fact concerning the disciplinary action taken against the plaintiff by the defendants, because the same is all contained in the correspondence between the parties or admitted by the answer. Therefore, whether the defendants' disciplinary action against the plaintiff was without jurisdiction, and denied him due process of law, is purely a question of law on undisputed facts.

It is evident that the jurisdiction of the defendants, as a chapter committee, must be strictly construed, for they have only the disciplinary power delegated to them by regulation no. 6 of the institute, and are required to exercise this power in strict compliance with all the procedural requirements of that regulation, or their action will be without jurisdiction and void. [1]

The chapter committee has no jurisdiction over the plaintiff. nor the subject matter of his alleged breach of ethics, until and unless he is given the 20 days' notice of the "particulars of the charge" against him, prior to the date set for his hearing, and

---

[1] Sections 6.23, 6.42 and 6.74 of Regulation No. 6 read:

"6.23   Without in any way waiving or relinquishing its power to act on its own motion, on complaint, or otherwise, the Professional Ethics Committee delegates to each Local Chapter of the Institute certain of its duties and powers of investigation, inquiry, hearing, decision and recommendation, subject to the procedural requirements set out hereinafter."

"6.42   Each Local Chapter shall discharge this responsibility through a Chapter Committee which may upon its own motion, and shall upon the complaint in writing of any party, investigate the actions, or make inquiry of any Member subject to the Chapter's jurisdiction or responsibility when there is reason to believe, or it is charged, that the Member has violated the Institute's By-Laws, Code of Ethics, any other Regulation, or has acted in a manner injurious to, prejudicial to the best interest of, or tending publicly to discredit the Institute, the M.A.I. designation, or the appraisal profession."

"6.74   Should the Committee determine the conduct charged would be grounds for recommendation of Suspension or Expulsion it shall conduct a formal hearing, complying with all procedural requirements of this Regulation covering notice, the qualifications of Committee members, production of documents and witnesses, and examination and cross-examination. A transcription or recording of the proceedings at such hearing shall be made. The cost of an original and copy thereof shall be divided equally between the Chapter and the Member."

is allowed 10 days prior to the hearing date in which to file his answer. [2]

The defendants in their answer have correctly compared the disciplinary proceedings here with those pertaining to bar and medical associations, and assert that regulation no. 6 of the institute "differs in no way from identical provisions of bar and medical associations in providing for a committee to inquire into the professional conduct of members, to investigate that conduct, and if it preliminarily appears that professional standards may have been violated, to call a hearing at which they are required to accord the member a full opportunity to be heard, to introduce documentary evidence, call witnesses on his own behalf and question committee members, who themselves may question the member, and thereafter, after considering all of the evidence and testimony, to dismiss the charges or to find some or all substantiated and to recommend disciplinary action." [3]

Disciplinary proceedings against doctors and lawyers require that the charges preferred against the accused member shall be specifically and particularly stated. In the leading case of State ex rel. Jordan v. Pattishall, (1930) 99 Fla. 296, 126 So. 147, the Supreme Court of Florida held that the charges preferred against a dentist were insufficient upon which to base disciplinary action against him, and in support of its decision quoted with approval an early disbarment case in an opinion written by Mr. Justice Mabry, speaking for the Supreme Court of Florida in this language —

"The proceedings in such matters are summary in their nature, but not arbitrary or despotic. The court acts in the exercise of a sound discretion and according to law. The charges preferred against the attorney should be specific, due notice of them must be given,

---

[2] Section 6.81 of Regulation No. 6 of the Institute reads:

"6.81   Prior to a formal hearing on the Chapter Committee's own motion it shall in writing, by registered mail bearing a postmarked date at least 20 days prior to the date set for hearing, notify the accused Member of the time and place set for hearing, of the particulars of the charge, and of the Articles of the Code of Ethics, By-Laws, and/or Regulations he is alleged to have violated, and inform him that he must file an answer with the Committee at least 10 days prior to the hearing date."

[3] Defendants' Answer, paragraph 14, page 13.

and full opportunity afforded for an answer and a fair investigation of their merits. The consequences to an attorney of a judgment disbarring him from the practice of his profession are serious enough to suggest such a course. His profession may be a source of great value to him, equal to any property rights which he may have, and the loss of it may inflict destitution and poverty upon himself and family. In such proceedings the attorney is clearly entitled to have the causes urged as a ground for his disbarment specifically and particularly stated, in order that he may meet them, and a defect in the proceedings in this respect is a ground for interposition by the Supreme Court. Ex parte Bradley, 7 Wall. 364 [19 L. Ed. 214]; Ex parte Robinson, 19 Wall. 505 [22 L. Ed. 205]; State ex rel. v. Kirke, supra; Ex parte Burr, 9 Wheat. 529 [6 L. Ed. 152]."

In the Pattishall case, supra, the Supreme Court held —

. . . it is only necessary to determine one question to dispose of this case, and that is whether or not the accusation filed against the relator was sufficient to constitute a basis for the revocation of his license to practice dentistry. The rule is that, where statutes of this kind are invoked, the provisions of the statutes must be strictly construed, and such provisions must be strictly followed, because the statute, as hereinbefore stated, is penal in its nature.

Likewise, the proceeding against the plaintiff is penal in its nature, and so referred to in the express provision of regulation no. 6. [4]

To the same effect is State ex rel. Sbordy v. Rowlett, (1936) 125 Fla. 562, 170 So. 311. The Supreme Court held that the charges against Dr. Sbordy did not constitute any predicate upon which to try the doctor upon the statutory grounds governing his ethical conduct, the court saying at page 313 after a review of the charges —

. . . In what manner relator has been guilty of fraud or fraud or deceit in his admission and why it is that the certificate granted him is fraudulent and improper, does not appear from such charges so attempted to be made in said paragraph numbered 1, and in the absence of specific charges, such paragraph fails to charge the relator with being guilty of any acts which, under the provisions of the applicable statutes, constitute grounds for the revocation of his license.

---

4 Section 6.99 of Regulation No. 6 reads in part as follows:

"6.99   By a three-fourths vote of the members of the Appeal Board present it may:

"  . . .

"c.  Modify or change the *penalty* recommended by the Chapter Committee, or

"  . . ."

Reaching the same result are the medical and bar disciplinary cases of: Medical Society of Mobile County v. Walker, (Sup.Ct. Ala., 1944) 16 So.2d 321; Hickey v. Wells, (Fla.Sup.Ct. 1956) 91 So.2d 206; Zachary v. State, (1907) 53 Fla. 94, 43 So. 925; and State of Florida ex rel. The Florida Bar v. Grant, (Fla.Sup. Ct. 1956) 85 So.2d 232;

In Zachary v. State, supra, the Supreme Court of Florida stated the rule in this language —

> . . . It is also true that charges preferred against an attorney for the purpose of disbarring him should be clear and specific, and should be stated with great particularity, that the attorney may be fully apprised of the nature of the charge he is called upon to meet, and may be enabled to prepare his defense.

The same rule, requiring the charges preferred to be stated with particularity against the accused member[5], or the disciplinary action will be void, is illustrated in the following cases — Robins v. Florida Real Estate Commission, (Fla.App. Third District 1964) 162 So.2d 535; State ex rel. Bauder v. Markle, (1932) 107 Fla. 742, 142 So. 822; State ex rel. Dewald v. Matia, 125 Ohio St. 487, 181 N.E. 901; People ex rel. Shenfield v. Waldo, Police Com'r., 163 App. Div. 857, 146 N.Y.S. 880; Leo v. Local Union No. 612 I. U. O. E., 174 P.2d 523, 168 A. L. R. 1440; Ray v. Brotherhood of Railroad Trainmen, 182 Wash. 39, 44 P.2d 787; Cason v. Glass Bottle Blowers Association of the United States and Canada, 37 Cal.2d 134, 231 P.2d 6, 21 A.L.R.2d 1387; and Nissen v. International Brotherhood of Teamsters, Chauffeurs, Stablemen & Helpers of America, 229 Iowa 1028, 295 N.W. 858.

In the light of these cases and the requirement of section 6.81 of regulation no. 6 of the institute, that the plaintiff be furnished with the particulars of the charges preferred against him, it seems obvious that the charges preferred by the defendant against the plaintiff in the chapter committee's letter of January 12, 1967, and its letter of February 1, 1967, failed entirely to notify the plaintiff of any act or acts of his, which constitute a breach of either the institute's code of ethics, or its regulation no. 10 governing conduct of its members. Such being the case, the defendants are without jurisdiction to proceed with their disciplinary action against the plaintiff, because the foundation upon which the same is based is null and void.

---

5 See Section 6.81 of Regulation No. 6, supra at page 3, where the member to be disciplined is referred to as the "accused member".

An inspection of the charges contained in these communications discloses the fact, as stated by the Supreme Court of Washington in Ray v. Brotherhood of Railroad Trainmen, supra, that the charges amount "to no more than a meaningless form of words which conferred upon the Brotherhood no jurisdiction whatsoever . . .". In the first place, the statement of the charges in both communications failed to charge the plaintiff with anything whatsoever. They merely recite that "it *appears* to the committee (chapter committee) that in these matters (meaning plaintiff's six appraisals identified only by name and date) you *may have* violated" six provisions of the institute's regulation no. 10 and the code of ethics, identified only by number, "in that said appraisals appear to display evidence of incompetency and/or advocacy." The plaintiff attempted in his letter of January 27, 1967, to the defendants, to have the charges made more definite, saying — "I know of no unethical conduct on my part, and, if the committee does, it should be able to tell me what they think it is, so that I may properly defend myself against the same."

For reply, the defendants, in their letter of February 1, 1967, instead of particularizing the charges already preferred, increased their indefiniteness by advising the plaintiff "that the scope of the formal hearing will embrace all the matters described in the following papers", and then the plaintiff is referred to correspondence which had passed between the parties, one letter of which contained a 53 page appendix, and another letter referred the plaintiff to all the right of way appraisals which he had made since 1962. Then this letter went on to add six more new charges against the plaintiff, equally as indefinite, stating that "in your appraisals referred to, you may have also violated paragraph 7 of the code of ethics," without alleging any act of the plaintiff whatever. Since these six new charges were added only five days before the date set for the hearing, instead of the 20 days required by section 6.81 of the institute's regulation no. 6, which also requires the plaintiff to file an answer 10 days before the hearing date, it is obvious that the jurisdictional requisite of sufficient time of notice was not given, as mandatorily required, and that these charges, aside from their vague and uncertain expression, could constitute no jurisdictional basis upon which to discipline the plaintiff, for the defendants could not have jurisdiction of the plaintiff until they had complied with the requirements of their own regulations, specifying the number of days which the plaintiff would have to prepare his defense and to file his answer.

96

Bearing in mind that the informal hearing, required by the institute's regulation no. 6, [6] had already been held, that the defendants, as a chapter committee, were proceeding to a formal hearing [7] to determine what penalty to assess, if the charges were supported by the evidence, and that their decision required "findings of fact", [8] the defendants, if they had any reasonable ground to discipline the plaintiff, should have been able to charge him with it, as required on a formal hearing by section 6.81 of regulation no. 6, and have stated the "particulars of the charge", specifying what act or acts of the plaintiff constituted a violation of the institute's code of ethics or regulation no. 10 governing conduct of its members.

Some clue to the reason for the vagueness and indefiniteness of the defendants' charges against the plaintiff may be furnished

---

[6] Section 6.71 of Regulation No. 6 reads:

"6.71 Whenever the Chapter Committee determines to initiate an inquiry or investigate the business conduct of a Member, whether on its own motion or pursuant to written complaint, it may invite the Member to an informal hearing upon the subject matter of the inquiry, investigation, or complaint. In such instances the Committee shall in writing notify the Member, at least 10 days prior to the hearing date, and specify the subject matter of the informal hearing and the documents, if any, he is to supply to the Chapter Committee.

"After the conclusion of an informal hearing, the Chapter Committee shall, within 30 days, determine whether (1) the investigation should be discontinued, (2) the complaint dismissed, or (3) to issue an Admonishment or Reprimand if accepted by the Member as provided in 6.73."

[7] Section 6.72 of Regulation No. 6 reads:

"6.72 Should the Chapter Committee determine that a formal hearing be held, it shall thereupon consider whether the conduct charged, if supported by the evidence adduced at a formal hearing, would, in its judgment, be ground for:

"1. Admonishment or Reprimand, or

"2. Recommendation of Suspension or Expulsion."

[8] Section 6.894 of Regulation No. 6 reads:

"6.894 After termination of a formal hearing the Committee, in executive session, shall consider the testimony and exhibits, if any, and determine the disposition of the matter. Its decision shall be in writing, signed by a majority of its members, and shall include findings of fact and, if disciplinary sanction is imposed or recommended, a reference to the Articles of the Code of Ethics, or other reason for discipline, upon which its decision is based, and shall be transmitted by registered mail to the Member concerned."

by the allegations of their answer, in which they admit that they do not know whether there was any unethical conduct connected with plaintiff's appraisals,[9] and that the formal hearing would not be confined to these appraisals, but would include "other documentary evidence".[10]

The most that can be said for the defendants' letter to the plaintiff of February 1, 1967, presumably to particularize the previous charges, is that the plaintiff would have to review a large quantity of his previous appraisal work over a period of five years, and guess at what the defendants attempted to charge him with. This type of charge preferment has been condemned by the Third District of Florida in Robins v. Florida Real Estate Commission, (Fla.App. 1964) 162 So.2d 535, 537, in this language —

> While it is true that an information in an administrative proceeding need not be stated with the technical nicety or formal exactness required of pleadings in the court, the charges should be specific, informing the accused with reasonable certainty of the nature and cause of the accusation against him so as to be given reasonable opportunity to defend against those charges. See: State ex rel. Jordan v. Pattishall, 99 Fla. 296, 126 So. 147; State ex rel. Sbordy v. Rowlett, 125 Fla. 562, 170 So. 311; 1 Fla.Jur., Administrative Law, §116. In the instant case, the information charges the petitioner with an alleged course of conduct over a period of three years without stating, with any degree of exactness, when or in what specific manner he has violated the provisions of Ch. 475, Fla.Stat., F.S.A. To expect the petitioner to review his acts for a period of three years in an effort to ascertain which of them may constitute a violation of Ch. 475, Fla.Stat. [thereby enabling him to defend against the information filed against him], certainly does not specifically inform him with reasonable certainty of the nature and cause of the accusation against him.

Also, in the defendants' letter to the plaintiff of January 12, 1967, the plaintiff was advised that the hearing concerning four of his six appraisals would be on February 6, 1967, but no date

---

9 "Answering paragraph 9, Defendants admit that Regulation No. 6 provides for a fair hearing and all the requirements of due process of law, but Defendants deny they are Plaintiff's 'accusers' and refer the Court to paragraph 3 of the Complaint, wherein Plaintiff alleges Defendants do not know whether there was any unethical conduct connected with Plaintiff's appraisals, which Defendants admit, . . ." (Defendants' Answer, paragraph 9, page 9)

10 ". . . Answering further, defendants state that the basis of the formal hearing will be plaintiff's appraisals and other documentary evidence, . . ." (Defendants' Answer, paragraph 13, page 12)

was set for the hearing concerning two of his appraisals, the plaintiff being merely advised that a formal hearing on these "will be held at a subsequent date and time mutually convenient to you and the committee". Such indefinite time of hearing is not in accordance with the spirit of section 6.81 of regulation no. 6, which requires the charges to be heard on a day certain, and to be concluded as rapidly as possible. It is not in accordance with procedural due process of a fair trial that two charges should be hanging over the plaintiff's head for an indefinite period, and the reason is obvious, as stated in the first headnote of Murrell v. The Florida Bar, (Fla.Sup.Ct. 1960) 122 So.2d 169 —

> The requirement of the disciplinary rule that investigations and hearings of disciplinary cases shall be prosecuted and completed as promptly as the ends of justice will permit states the most essential requirement, the reason being that the minute that such a proceeding is instituted the lawyer's professional reputation is in danger of being permanently impaired and such charge should not be suspended in limbo but should be dispatched and if found to be without merit the lawyer charged should be exonerated. 31 F.S.A. Integration Rule of Florida Bar, art. 11.

Further, the defendants' notification letter to the plaintiff of January 12, 1967, advised him that the defendants did not intend, at the hearing on February 6, 1967, to call any witnesses on its behalf, the language being — "The committee will call no witnesses on its behalf in the first session of the formal hearing." In their answer the defendants state that they will, at the formal hearing, accord the plaintiff the presumption of innocence. [11] Since section 6.894 of regulation no. 6 [12] requires the defendants, in their decision at the end of the formal hearing, to "consider the testimony" and make their "findings of fact" based upon the same, it is difficult to apprehend how any charge could be proven under the presumption of innocence and without testimony before the chapter committee, unless they intended to base their decision on information not brought out at the hearing. Any decision by a chapter committee upon charges preferred against an accused member, must be based upon the evidence produced at the hearing — nothing else, and the announced intention of the defendants not to call any witnesses,

---

[11] On page 12, Defendants' Answer alleges: "Answering further, defendants state . . . that they will of course presume Plaintiff's innocence . . ."

[12] See footnote 8 supra.

both in their letter and in their answer, [13] is tantamount to an announcement that they will make their decision upon evidence not in the record. Such decision would be illegal and void, and not in accordance with either the letter or the spirit of the provisions of regulation no. 6, and would be a denial of procedural due process of law. In Jackson v. Mayo, (Fla.Sup.Ct. 1954) 73 So.2d 881, 882-883, the court, in holding illegal cancellation of a parole upon evidence not produced at the hearing, said —

> We do not say that hearings of the sort mentioned in the statute must be formal in nature. Nevertheless, the Commission in conducting such hearings must be guided by basic principles of fairness. At common law a hearing required at least the right seasonably to know the charges preferred, to meet them by competent evidence and to be heard by counsel upon the probative force of the evidence adduced by *both* sides. See Wisconsin Telephone Co. v. Public Service Commission, 232 Wis. 274, 287 N.W. 122, 133. The substance of these common-law requirements is embraced within our statute, and under this statute the Commission has no authority in arriving at its determination to take into consideration matters not presented in evidence at a hearing attended by the parolee. If the Legislature had intended to give the Parole Commission the power to revoke a parole at its pleasure, it would not have been necessary so carefully to provide for a hearing, after notice, with counsel if desired by the parolee, and stipulate in the statute that within a reasonable time after the hearing such Commission should "make findings upon such charge[s]" and "enter an order determining" whether such charges had been proved.

To the same effect is Thorn v. Florida Real Estate Commission, (Fla.App. 2nd Dist., 1962) 146 So.2d 907, 910, wherein that court said —

> Administrative officers, boards or commissions who are required to make a determination upon or after a hearing, in the exercise of a judicial or quasi-judicial function, cannot act on their own information. All parties to such a hearing must be fully apprised of the evidence submitted or to be considered, and nothing can be treated as evidence which is not introduced as such, for there is no hearing where a party cannot know what evidence is offered or considered and is

---

[13] ". . . that the Committee proposed to call no witnesses on its own behalf; . . ." (Defendants' Answer, paragraph 3, page 3)

"Answering paragraph 10, Defendants deny that Regulation No. 6 requires either Plaintiff or Defendants to call witnesses on their own behalf . . ." (Defendants' Answer, paragraph 10, page 9)

"Defendants . . . deny that the statement therein [meaning Defendants' letter of January 12, 1967] that they will call no witnesses in their behalf at the first session infringes any of Plaintiff's rights . . ." (Defendants' Answer, paragraph 7, page 8)

not given an opportunity to test, explain or refute. It is improper for such an officer, agency or commission to base its decision or findings upon facts gathered from its own records without introducing the records into evidence. 42 Am.Jur., Public Administrative Law, §130, p. 464; 18 A.L.R.2d 556 and 564.

Administrative bodies are not exempt from the constitutional requirement that procedural due process be accorded those persons appearing before them. Jonas v. Florida Real Estate Commission, Fla.App. 1960, 123 So.2d 264.

The disciplinary proceedings instituted by the defendants against the plaintiff are further illegal and void, because of the disqualification of the chairman of the chapter committee, which preferred the charges against the plaintiff. Section 6.56 of regulation no. 6 [14] mandatorily provides that if a member of the chapter committee is personally interested in any case, he "shall be disqualified", and in the event that the member of the chapter committee is the chairman, and is personally interested in the case, he also "shall be disqualified". Provision is made under this section for the appointment of an alternate committee member to take the place of the disqualified member. In the defendants' memorandum of law, submitted to the court. it is admitted that the chairman "was personally involved in two of the parcels of land", which were the subject matter of two of the appraisals concerning which the defendants preferred charges against the plaintiff. In his complaint, the plaintiff contends (in paragraph 9, pages 9 and 10) that the participation by the defendant chairman of the defendant chapter committee "infected the entire proceedings with the vice of prejudice", and for that reason the disciplinary proceedings against him were null and void. Whether the defendant chairman was prejudiced. as a matter of fact, is not the criterion, for section 6.56 only requires him to have been personally interested in any case. Obviously, when the chairman of the defendant committee testified in condemnation trials for the condemning authority in which the plaintiff represented the property owners in the same trials, he was personally interested in the case, both in the

---

[14] Section 6.56 of Regulation No. 6 reads:

"6.56 In the event a member of the Committee is personally interested in any case, he shall be disqualified and the Chairman shall appoint one of the alternate Committee members to act in his place. In the event the Chairman is personally interested in a case, he shall be disqualified, and the other members of the Committee shall select one of their number to serve as Chairman pro tempore, who shall select one of the alternate Committee members to serve in the consideration of the case."

letter and the spirit of said section 6.56. Furthermore, the defendants admit in their answer that the chairman had participated in all of the preliminary disciplinary proceedings against the plaintiff, including the preferment of the charges against him, as evidenced by his signing, as chairman of the defendant committee, the charges themselves, which were being prosecuted against the plaintiff on the committee's own motion. Among other things, the answer says that all of the defendants had "carefully analyzed the reports [plaintiff's appraisals] prior to inviting plaintiff to an informal hearing thereon".[15] Again, that all of the defendants "had examined the appraisals prior to that time", meaning prior to the informal hearing.[16] Also, the defendants' answer states — "After the conclusion of the informal hearing, the committee determined that a formal hearing should be held . . . and notified plaintiff, by the chairman's letter of January 12, 1967, . . . for the purpose of inquiring into the same 6 appraisals which had been the subject of the informal hearing."[17] Furthermore, the defendants' answer alleges — "Answering further defendants state the committee had already held an informal hearing and had considered all of the materials submitted by plaintiff . . ."[18] Notwithstanding these admissions in the answer, the defendants deny that the defendant chairman of the chapter committee was disqualified, alleging in their answer — "Answering further, defendants deny defendant chairman is disqualified . . ."[19]

A comparison of the exhibits attached to the complaint as exhibits "A", "C" and "D" part 1 to "D" part 4, inclusive, shows that the defendant chairman signed each and every letter of accusation, ordering the plaintiff to an informal hearing and demanding information about the plaintiff's appraisals, including information on the Belcher and Fritz parcels, concerning which the defendant chairman testified in opposition to the testimony of the plaintiff at the condemnation hearings of the valuations of these parcels.

The defendant chairman should not have participated in any of these proceedings against the plaintiff, since the charges embraced appraisals of property in which he had rendered his own appraisals on employment by the condemning authorities. It was

[15] See Answer, page 11.
[16] See Answer, page 12.
[17] See Answer, page 5.
[18] See Answer, page 8.
[19] See Answer, page 9.

not necessary for the plaintiff to move for the chairman's disqualification, because section 6.56 of the institute's regulation no. 6 renders him automatically disqualified, as illustrated by the case of Petition of Dade County Bar Association President's and State Attorney's Special Committee, (Fla.Sup.Ct. 1959) 116 So.2d 1, 4, 6, where the Supreme Court of Florida laid down these fundamental rules for the guidance of the Bar in a similar situation, and set forth the reasons for the rule in this language —

> In the profession of the law, a good reputation is the petitioner's most valuable asset. It is unfortunate, but nevertheless true, that public accusation of dishonest or unethical conduct, whether valid or not, leaves an everlasting scar.
>
> Any member of the Committee appointed, who represents clients involved in any matter under investigation, should promptly disqualify himself from further participation in the investigation.
>
> If in fact a case is being investigated by the Committee in which members of the Committee are interested, such members should excuse themselves from participating in such matters, and it should not be necessary for the party being investigated or any other person to suggest such course of action to the members of the Committee.

The defendants contend, however, that none of this can be reached by the court, because the plaintiff has no property right involved, and he has not exhausted his internal remedies provided by the institute's regulation no. 6, governing the right of appeal to the national professional ethics committees of the institute, which, however, is a matter of grace and not of right — the chairman of that committee may deny the appeal, which automatically makes the recommendation of the chapter committee that of the national committee of the institue. [20]

---

20 Section 6.91 of Regulation No. 6 reads:

"6.91   If the Chapter Committee takes or recommends disciplinary action, the party aggrieved may, within 30 days after the postmarked date of notice of the decision of the Chapter Committee, petition for leave to appeal to the National Committee. An appellant shall forward to the Institute the sum of $100, which will be retained to defray expenses incurred by the National Committee."

Section 6.96 of Regulation No. 6 reads:

"6.96 · The Chairman of the National Committee shall take under advisement the brief, answer, if any, and the comments and recommendation and shall, in his discretion, allow or deny the petition for leave to appeal."

Section 6.97 of Regulation No. 6 reads:

"6.97   If the petition for leave to appeal is denied, the party or parties shall be so notified by the Chairman of the National Commit-

The case of Grand Lodge K. P. of Florida v. Taylor, (1920) 79 Fla. 441, 84 So. 609, relied upon by the defendants, and similar cases involving expulsion from a social club or fraternal organization, where the court refused to inquire into the guilt or innocence of the expelled member, are not in point here. Even in such cases, however, the court will inquire into whether the procedural requirements of the rules of the club or fraternity have been complied with, and will declare illegal the expulsion where these procedural requirements have not been met. See La Gorce Country Club v. Cerami, (Fla.Sup.Ct. 1954) 74 So.2d 95; and State v. Florida Yacht Club, (Fla.App.1st, 1958) 106 So.2d 207.

In the Florida Yacht Club case, supra, at page 209, the court said —

There is a valid distinction between those institutions such as trade unions, professional associations or trading exchange and like organizations, affecting a person's right to earn a living on one hand, and private social clubs on the other. Certain conduct, which might not justify expulsion from some other type of association, where membership is a condition to earning a livelihood, or essential to the enjoyment of a contract or property right, may justify expulsion from a private social club.

In 6 Am.Jur.2d, *Associations and Clubs* §39, pages 470-471 —

. . . Also, it is generally held that if a member of an association is suspended or expelled without jurisdiction, notice, or authority, or by proceedings not conducted according to the rules of the organization, but contrary to law and the fundamental principles of justice, it does not change his legal status, and the member so unlawfully suspended or expelled is not required to appeal within the order, but may resort to the courts for relief. In other words, the rule as to exhaustion of internal remedies presupposes a legal and regular proceeding for suspension or expulsion.

The cases cited supra of Leo v. Local Union No. 612 I. U. O. E., Ray v. Brotherhood of Railroad Trainmen; Cason v. Glass Bottle Blowers Association, etc., and Nissen v. International Brotherhood of Teamsters, etc., all stand for the rule announced in 6 Am.Jur.2d §39, page 470, supra, and as stated in 7 C.J.S. *Associations* §34 page 81, where it is said —

. . . However, the rule requiring a member to exhaust his remedies within the organization before applying to a court of equity for relief is subject to the qualification that the act or acts complained of must have been in accord with the association's regulations, and, where the proceeding is irregular and the association acted without jurisdiction, the member aggrieved thereby may seek judicial redress by a direct appeal to the courts in the first instance . . .

---

tee and the decision and recommendation of the Chapter Committee shall be the decision and recommendation of the National Committee, subject only to optional action by the National Committee under its primary authority and responsibility as outlined in Section 6.20."

No one could reasonably contend that the American Institute of Real Estate Appraisers is not a professional society or organization. The by-laws of the American Institute of Real Estate Appraisers, attached to the answer of the defendants, demonstrate the rigor of the requirements to be a member of the institute, in order to place the designation M.A.I. after a member's name. He must be 30 years of age; he must have had seven years' experience in the real estate field, two of which as a full-time broker; and he must pass a rigid "two or more examinations given by or under the authority of the admissions committee". These examinations must cover a familiarity with the institute's by-laws, code of ethics, and standards of professional conduct. They must also include a test of his knowledge of "principles of land utilization and the methods and techniques of real property valuation, as outlined by the institute". It must also include a test of the "skill of the candidate in solving practical appraisal problems". Then, if all of these requirements are met, the candidate for membership must have the approval of the local chapter where he expects to serve, and an 80 percent vote of the entire membership of the governing council of the institute.[21]

In paragraph 2 of the complaint, the plaintiff alleges the great value of the designation M.A.I. after his name, and in their answer to this paragraph, the defendants admit "that membership in the institute and its chapters is valuable economically".[22]

When the plaintiff became a member, after passing all of the requirements, there existed a contract between him and the institute that he would not be disciplined except in accordance with the provisions of regulation no. 6 of the institute, and the defendants are bound by the provisions of this regulation to the same extent as is the plaintiff. In failing to comply with the procedural requirements of the governing provisions, which define due process for disciplining a member, as mentioned herein, the actions of the defendants are null and void, and without jurisdiction, and the plaintiff is not required, under the circumstances, to exhaust his internal remedy of appeal within the institute before he can apply to a court of equity for relief.

---

[21] See Section 2.12 of the By-Laws of the Institute, attached to the Defendants' Answer.

[22] Defendants' Answer, paragraph 2, page 2.

There remains for determination but one further contention of the plaintiff, for which he has requested a declaratory judgment, and that is the reasonableness of section 6.893 of regulation no. 6,[23] which limits counsel for the accused member, in his cross-examination of adverse witnesses against the accused member, to direct his questions to the chairman, rather than to the adverse witness. In view of the effect of the seriousness of a charge of unethical conduct to an accused member and his business, which could stigmatize his professional career if sustained, the court holds that such a requirement is arbitrary and unreasonable, and that the right of cross-examination should not thus be so curtailed. See Wadell v. Board of Zoning Appeals, 136 Conn. 1, 68 A.2d 152.

Wherefore, the premises considered, it is declared, ordered and decreed —

(1) That plaintiff's motion for judgment on the pleadings be and the same is hereby granted;

(2) That the charges preferred against the plaintiff are without jurisdiction, and are null and void;

(3) That the procedure intended to be invoked against the plaintiff, of determining the sufficiency of the charges without the production of any witnesses, is illegal and in excess of the jurisdiction of the defendants;

(4) That the notice served upon the plaintiff, preferring new charges against him in the chapter committee's letter of February 1, 1967, only five days before the time set for the hearing, is contrary to the provisions of section 6.81 of regulation no. 6 of the institute, and is null and void;

(5) That section 6.893 of regulation no. 6 of the institute, curtailing the right of cross-examination by counsel for the

---

23 Regulation 6.893 of Regulation No. 6 reads:

"6.893 The Chairman and members of the Committee may examine and cross-examine parties and witnesses at any formal hearing. all parties may be present while any witness is testifying and shall be afforded an opportunity to cross-examine any adverse witness. To preserve the orderliness of the proceedings, a party desiring to cross-examine an adverse witness shall direct his questions to the Chairman, either orally or in writing, who shall thereupon direct the questions to the adverse witness. At the request of any party, no more than one adverse witness shall be allowed in the hearing room at the same time."

accused member in that he is not permitted to direct his questions to adverse witnesses, is arbitrary and unreasonable;

(6) That the preliminary injunction heretofore issued by the court should be and the same is hereby made permanent, and the defendants be and they are hereby permanently enjoined from proceeding further against the plaintiff on the existing charges preferred against him, and his temporary injuction bond be and the same is hereby cancelled.

