### JOHNSON v. ATLANTIC DISCOUNT CO., Inc. et al.
No. 75-2045-SP.

County Court, Palm Beach County.

November 10, 1976.

James J. English, West Palm Beach, for the plaintiff.

Patrick McGrotty, Miami, for the defendant Atlantic Discount Co.

Richard J. Barron, West Palm Beach, for the defendant Kauff's Wrecker Service.

JAMES T. CARLISLE, County Court Judge.

The procedural history of this case is typical of so many where the action was initiated in proper person, followed by the appearance of counsel. Plaintiff sued the defendant Kauff's Wrecker Services for damages done to his vehicle in the amount of $1,500. Defendant Kauff answered with a general denial and a counterclaim alleging that it picked up plaintiff's car pursuant to instructions from Atlantic Discount Company, Inc., and claiming towing fees and storage on the automobile. The matter was tried before the court and after hearing the evidence between plaintiff and defendant Kauff it was apparent that Atlantic Discount Company was an indispensable party. The case was then continued to allow plaintiff to join Atlantic Discount Company. Plaintiff retained the services of counsel prior to the first attempt to bring the matter to trial.

Plaintiff then filed an amended complaint alleging that defendant Kauff, acting upon orders from defendant Atlantic Discount, repossessed his automobile and that it was damaged and vandalized while under the control of the defendants. Plaintiff requested damages and that Florida Statute 679.503 be declared unconstitutional as a violation of the due process clauses of the federal and state constitutions. Defendant Kauff then filed an amended counterclaim seeking storage charges at the rate of $3 per day and a cross-claim requesting indemnification under an indemnification agreement from Atlantic Discount in the event Kauff was deemed liable to plaintiff. Defendant Atlantic Discount answered the counterclaim and filed affirmative defenses alleging that the indemnification agreement protected defendant Kauff only from damages flowing from unauthorized removal.

The matter again was tried by the court and the court makes the following findings of fact —

Plaintiff had a car which he financed through defendant Atlantic Discount. He was behind in his payments. At the time in question, he was working on the car and the rear wheels and engine had been removed from it. Many of the parts which had been removed from the engine were in the back seat and trunk of the car. The car was located on a vacant lot at the rear of an apartment occupied by a friend of the plaintiff.

Defendant Atlantic Discount decided to repossess the car. Defendant Kauff was engaged for that purpose. The car was towed to Kauff's storage lot. The lot is surrounded by a chain link fence with barbed wire on the top. Each driver who wishes to bring a vehicle into the lot must obtain a key and lock the lot up after he is through. The lot is floodlit at night by means of an automatic system.

When plaintiff discovered the car was missing he went to defendant Atlantic Discount. In the company of a Mr. Lynn from Atlantic Discount, plaintiff went to Kauff's lot for the purpose of retrieving some of his personal property from the car. They discovered that the automobile had been vandalized and certain parts removed from the vehicle. A cut was found in the fence near the vehicle.

Plaintiff paid off the loan. Plaintiff did not pick up his car because no one would tell him who would take care of the damages. Plaintiff then initiated this action.

Florida Statute 679.503 provides as follows —

> *Secured party's right to take possession after default.* — Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace[1] or may proceed by action.

A large number of federal courts as well as a few state courts have had occasion to determine whether the actions of creditors in repossessing motor vehicles under this provision constitute "state

---

1. It is rather amazing how often a breach of the peace accompanies a self-help repossession. See footnote 17, Watson v. Branch County Bank, *infra* at 967. This court is personally aware of two cases recently or presently pending in Palm Beach County, involving an actual or alleged breach of the peace. See the complaint in Barfield v. General Finance Corp., case number 75-4211-SP and the police report and judgment of guilty in State v. Funk, case number 75-986-CF, copies of which are attached hereto and made a part hereof.

action" or are performed "under color of state law."[2] Concededly, the vast majority of these cases hold that there is either no "state action" or that the self-help repossession was not "under the color of state law." These cases are cited in Gibbs v. Titelman 369 F. Supp. 38 (E. D. Penn. 1973). Despite the almost overwhelming weight of authority to the contrary, this court is pursuaded that the reasoning of Judge Bechtle in Gibbs v. Titelman *supra,* Chief Judge Fox in Watson v. Branch County Bank, 380 F. Supp. 945 (W. D. Mich. 1974), and Justice Pashman of the Supreme Court of New Jersey in his dissent in King v. South Jersey National Bank, 330 Atlantic 2d 1 (N. J. 1974) is correct. This court will not attempt to match either the eloquence or the erudition of these opinions.

The federal cases are civil rights actions. They do not address the question of due process. In those cases, the debtor was unable to clear the hurdle of either state action or color of state law. They do not reach the question of due process.

"Due process" and "reasonable doubt" are two things that courts talk about but are reluctant to define except in the most general of terms. The definitions usually incorporate the very word that they seek to define.[3] Indeed, the terms do not lend themselves to ready definition.

This court believes that due process, especially as used in the Florida constitution, fundamentally means the obligation of government to provide for the rule of law in society. In more primitive times, when a man felt wronged by another, he did not rely on the law for redress. He fought to recover his property. He used "self-help." Often the fight spread to include other members of the group, resulting in a free-for-all.

Some societies, in preference to this disorganized carnage, developed the blood feud or vendetta. This was bad enough, but at least the fighting was restricted to particular families or a small segment of the community.

Eventually, however, societies began to regulate the right to use force to redress wrongs. Before one could use self-help he had to obtain the approval of the governing body of the society. Ultimately, the right to exercise self-help gave way to a system whereby the government took upon itself the right to redress wrongs

---

2. See 28 U.S.C. §1343 and 42 U.S.C. §1983.

3. See, for example, Instruction #2.12(b) Fla. Standard Jury Instructions in Criminal Cases, page 31.

and prohibited individuals from exercising self-help. Modern society requires a complete monopoly of the right to use physical force to settle disputes between private persons.[4]

When the federal constitution was written, its framers wisely realized that the federal government could not assure that every man's constitutional rights would be protected from infringements by other men. They did not attempt to make this guarantee. They restricted the protection to preventing the federal and state governments from trampling an individual's constitutional rights. The 14th Amendment provides —

"No state shall . . . deprive any person of life, liberty, or property, without due process of law."

Principles of federalism dictate that the federal government leave to the states the duty to protect as they deem best the rights of their citizens from infringement by other persons. Federal civil rights legislation sometimes restricts individual action but only when the courts can find, through whatever fiction, that the individual was acting under color of state law.

Because of the absence of federal control in this area, the responsibility to provide for the rule of law in society and to protect the rights of its individuals from infringements by other persons, hence due process, falls heavily on the states. The states should very jealously guard the rights of their citizens. The framers of the constitution of the state of Florida did not shirk this responsibility. They did not limit their guarantee of protection of the right of life, liberty or property from governmental bodies only. The Florida constitution provides in pertinent part as follows —

". . . no person shall be deprived of life, liberty or property without due process of law . . ." Article 1, Sec. 9.

Unlike the 14th Amendment to the federal constitution, there is no provision that "no state shall . . ." In the Florida constitution our citizens are protected not only from infringement by government, but also by our fellow man. Florida has guaranteed the rule of law in society. This court construes Article 1, Sec. 9, as meaning that Florida has recognized its responsibility to its citizens and will protect their rights from infringement by other persons. At the very least, it means that the legislature may not suffer, much less sanction, a self-help repossession without notice and opportunity for hearing.

---

4. Chapter 2, "Of Fights and Rights" Frank — *Courts on Trial*. A copy of this chapter is attached and made a part hereof.

The Florida Supreme Court in Northside Motors of Florida, Inc. v. Brinkley, 282 S.2d 617 (Fla. 1973) held that self-help repossession by a creditor under Florida Statute 679.503 is not an unconstitutional deprivation of property without due process of law in violation of the 14th Amendment (at 624) and that it did not constitute state action (a 622).

Blind adherence to the prior rulings of the Florida Supreme Court by trial courts would deprive that court of the opportunity to review its earlier rulings. Nevertheless, a county court judge should pay proper deference to the rulings of that court. In this light, it could be said that *Northside Motors* is correct in that the opinion is limited to whether §679.503 violates the 14th Amendment, and does not consider whether it violates Article 1, Sec. 9 of the Florida constitution.

*Northside* proceeds on the theory that §679.503 is no more than a codification or restatement of a common law right and a contract right recognized long before enactment of the statute. At common law, however, the creditor had to elect his remedies. He could repossess the property, thus nullifying the sale, or he could sue for the balance owed on the debt. §§679.503 and 679.504 permit him to repossess the property, sell it, and sue for a deficiency. §679.503 et seq. do considerably more than recognize a mere principle of the common law and therein lies state action. Nevertheless, "the fact that a procedure would pass muster under a feudal regime does not mean it gives necessary protection to all property in its modern forms." Sniadach v. Family Finance Corp., 395 U. S. 337, 23 L.Ed. 2d 349, 87 S. Ct. 1820.

*Northside* can also be criticized for its failure to find state action in that it did not examine the statutory scheme surrounding the acts of repossession, resale and issuance of new title.

Finance companies, like the defendant, are in the business of lending money to people like plaintiff, for the purchase of automobiles. They obtain title to the automobile and retain the title under a retail installment contract or conditional sale contract as security. Companies engaging in this practice are licensed and regulated by the Department of Banking and Finance of the state of Florida. See Chapter 520, Florida Statutes. The Department of Highway Safety and Motor Vehicles issues title certificates for vehicles sold in Florida. Any liens against the vehicle are noted on the certificate of title, §319.151, Florida Statutes. Upon payment of such lien the debtor is given a satisfaction of lien, which must be filed with the department, §319.16. The Department of Highway Safety and Motor Vehicles exacts a fee of $1 for recording each lien and each satisfaction thereof, §319.18. The department

keeps track of the status of title of each vehicle, §319.22. In the event the automobile is repossessed, §319.28 prescribes a method whereby title can be transferred by the Department of Highway Safety and Motor Vehicles from the finance company to a new purchaser.

Section 679.503, Florida Statutes, is but one strand in a web of state action. Without the help and co-operation of the Department of Highway Safety and Motor Vehicles the whole repossession/sale scheme would collapse, since good title could not be transferred to a new purchaser without it.

*Northside's* failure to apply the holding of Fuentes v. Shevin, 407 U. S. 67, 32 L.Ed. 2d 556, 92 S. Ct. 1983 (1972) on self-help repossession can also be faulted. As Chief Judge Fox pointed out in Watson v. Branch County Bank, *supra* —

> . . . it is slightly absurd to give intense constitutional scrutiny to rubber stamp prejudgment clerical process on the one hand, see e.g. Fuentes, *supra,* but to withhold constitutional scrutiny altogether when the state deliberately fails to establish or abolishes rubber stamp process and substitutes completely private self-help. In reality, the two cases are not qualitatively different and the merits of the due process questions ought to be reached in both.

Finally, the decision in *Northside* cannot be reconciled with McCune v. Wilson, 237 So. 2d 169 (Fla. 1970). There the American Institute of Real Estate Appraisers, a non-profit Illinois corporation, initiated disciplinary action against McCune. McCune obtained an injunction against the disciplinary action in the circuit court, 30 Fla. Supp. 89. The District Court of Appeal reversed, 222 So. 2d 230. The Supreme Court granted a writ of certiorari and reversed the District Court of Appeal, 237 So.2d 169. The institute was a voluntary, professional organization. Expulsion would not have prevented McCune from earning a living as a real estate appraiser. At the worst, expulsion would "convey to the community that the disciplined member was found lacking by his peers," *supra* at 171. Nevertheless, the Supreme Court held that this purely private action, statutorily unknown and unrecognized, had to conform to reasonable standards of due process and fairness. The effect upon one's life and livelihood of the repossession of an automobile is certainly greater than the "odor of public sanction" sought to be imposed on McCune. If constitutional scrutiny is to be applied to the activities of a voluntary professional organization, unable to affect one's livelihood beyond an "odor of public sanction," it must likewise be applied, with equal vigor, to the repossession of one's automobile as authorized by Florida statutes.

In Mitchell v. W. T. Grant, 416 U. S. 600, 40 L.Ed. 2d 406, 94 S. Ct. 1895 (1974), the Supreme Court of the United States

affirmed Louisiana's sequestratian statute against the attack that it violated procedural due process. The court noted that Louisiana's statute (i) authorized the issuance of the writ where one claimed ownership of property which was within the power of the debtor to conceal, dispose of or waste or remove from the parish during the pendency of the action, and (ii) where the grounds relied upon for the issuance of the writ clearly appear from specific facts shown in a verified petition or affidavit. (iii) The showing must be made to a judge, (iv) and the writ issued only upon the creditor posting a sufficient bond to protect the debtor against damages in the event the sequestration is shown to have been improvident. (v) The debtor could seek immediate dissolution of the writ which must be ordered unless (vi) the creditor proves the ground upon which the writ was issued, and finally that the debtor could regain possession of the property by filing his own bond to protect the creditor against interim damage to him, should he ultimately win his case.[5]

This court is of the opinion that these are the minimal safeguards which must be met prior to the seizing of one's property without notice and opportunity for hearing.

On the 20th day of April, 1976, the Court of Appeal of the state of Oklahoma held that the identical provision of the Uniform Commercial Code was unconstitutional in that the Oklahoma Constitution provided that "no person shall be deprived of life, liberty, or property without due process of law." Helfinstine v. Shelby Martin and Ford Motor Credit Company, Inc., 47-719. Copies of this opinion have not been submitted for publication in the national reporter system because the case is currently pending before the Oklahoma Supreme Court. (A copy of the opinion is attached hereto.) Both the statutory and the constitutional language are identical to that involved in this case. Section 679.503, Florida statutes, substitutes midnight raids on debtor's property for the rule of law. It is accordingly the judgment of this court that it is in violation of Article 1, Sec. 9 of the constitution of the state of Florida.

It is the finding of the court that the value of plaintiff Leroy Johnson's car at the time it was unlawfully repossessed by Atlantic Discount was $1,000. Judgment is accordingly entered in favor of Leroy Johnson and against Atlantic Discount in the amount of $1,000 actual damages.

---

5. The legislature could, following the above dictates, authorize the ex parte issuance of writs, upon a proper showing authorizing the seizure of secured goods, even though the goods are located in residences, thus increasing creditors' rights.

This court is also of the opinion that token punitive damages should be awarded in this case. The purpose of punitive damages is to deter others who would engage in like conduct. There is a great disparity in the relative strengths of finance companies and their debtors. A finance company can bear the loss of $1,000 with relative ease. It is undoubtedly more convenient for the finance company to accept the risk of having to pay actual damages in cases of this kind than it is to go to the trouble of according due process to its debtors. The imposition of actual damages will do little therefore to discourage this type of conduct. Few debtors would retain the services of counsel in cases of this sort. Most would merely suffer the loss of their property and continue as best they can with the business of living. Few attorneys, for that matter, are inclined to exert much effort in cases of this kind, where the potential rewards are so little. It is, therefore, the judgment of the court that punitive damages shall be awarded in the amount of $1,500.

It is also the judgment of the court that defendant Kauff is not liable to plaintiff. No negligence was demonstrated in the manner in which the vehicle was secured.